CHARLES S. RICHARDSON V. THE STATE.

No. 16854. Delivered May 2, 1934.

The opinion states the case.

*Taylor, Muse & Taylor,* of Wichita Falls, and *B. Y. Cummings,* of Fort Worth, for appellant.

*Sam B. Spence,* Dist. Atty., of Wichita Falls, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for life.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Elga Richardson by shooting him with a gun. The homicide occurred in the afternoon of January 1, 1934, just outside of the rear door of the residence of appellant. Deceased, who was the son of appellant, had been in Denton, Texas, attending school and had come home for the holidays. The mother of deceased had died sometime prior to the homicide and appellant had married again in less than a year. It appears that the relations between appellant and deceased had become somewhat strained due to the fact that deceased resented the early second marriage of his father. After his return home, quarrels ensued between appellant and deceased. According to the version of appellant, deceased took him to task for failing to pay some checks he had drawn while at school. Appellant's wife also became involved in the quarrels. Finally, a controversy arose as to the use of the family car by deceased. According to the testimony of the State, deceased was entering the house from the back yard when appellant struck at him. At the same time appellant

struck, a shot was fired and deceased fell, mortally wounded. Appellant walked to the garage with a black object in his hand. He later came back to the house.

Appellant testified that while in the house deceased had attacked him, knocking him down; that he secured a pistol for the purpose of protecting himself; that he finally ordered deceased out of the house; that deceased asked permission to return to the house to get his clothes; that as deceased came into the house he shoved deceased with the pistol and it accidentally discharged; that he had no intention of shooting deceased.

Appellant filed an application for a change of venue, wherein prejudice throughout the county was claimed to preclude the probability of a fair and impartial trial being accorded him. Upon the issue being joined, both sides introduced witnesses. The homicide occurred January 1, 1934. The indictment was returned January 4, and the trial had on the 15th of January, 1934. In the meantime, the case had been given wide publicity, all of the details of the transaction having been circulated over the county in newspaper articles. It appears to have been uncontroverted that the case had been generally discussed, and that the sentiment against appellant was bitter. It is true that some of the witnesses for the State testified that, in their opinion, appellant could secure a fair trial in the county. However, in most instances, these witnesses had been engrossed in their own affairs and had had no opportunity to hear the case discussed. On the contrary, many of appellant's witnesses had heard the case generally discussed and expressed the opinion that a fair trial could not be secured. The trial judge reserved his ruling until the jurors had been examined. Eighty-six jurors appeared, 5 of whom were excused by agreement of counsel. Ten jurors were secured out of the remaining 81. Thereafter 21 were summoned, 13 of whom disqualified because of opinions as to the guilt of appellant. One juror was secured. Later 5 additional jurors were summoned, all of whom disqualified by reason of opinions that appellant was guilty. Another 5 were summoned, 3 of whom were disqualified on account of opinions as to guilt. One juror was chosen, completing the jury. The testimony of the jurors on their voir dire was made a part of the bill of exception to the refusal of the court to change the venue, and was considered by the court in passing on the motion. If we comprehend the record, practically all of the jurors had heard the case discussed. Sixty-eight of said jurors enter-

tained the opinion that appellant was guilty. A number of them had expressed. their opinions and had heard others condemn appellant. The county had a population of approximately 20,000. The town of Olney, in which the homicide occurred, had a population of something over 4,000. It is our understanding of the record, from the testimony of the jurors and other witnesses, that the case had been generally discussed in every section of the county, and that the sentiment of the people was against appellant and the offense he was charged with having committed.

We are constrained to hold that no conflicting theories as to prejudice arose from the testimony. The record in its entirety leads inescapably to the conclusion that appellant and his case had been prejudged to the extent it was impossible that he could obtain that character of fair and impartial trial contemplated by the Constitution. It is the general rule, that, if conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory, it being his duty to weigh the evidence. Bond v. State, 50 S. W. (2d) 813, and authorities cited. However, when the evidence is such that it leads to the conclusion that bias, prejudice, or prejudgment of the appellant, or his case, is such as to render it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application. Bond v. State, supra, and authorities cited.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.