## CHARLES S. RICHARDSON v. THE STATE.

No. 17258.   Delivered November 14, 1934.
State's Rehearing Denied January 2, 1935.
Reported in 77 S. W. (2d) 215.

The opinion states the case.

*Taylor, Muse & Taylor,* of Wichita Falls, *B. Y. Cummings,* of Fort Worth, and *Jesse Owens,* of Vernon, for appellant.

*Ed Gossett,* Dist. Atty., of Vernon, *Sam B. Spence,* Dist. Atty., of Wichita Falls, *C. E. Penix,* Asst. Dist. Atty., of Graham, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for 99 years.

The opinion on a former appeal is found in 70 South Western, Second Series, at page 1003 (126 Texas Crim. Rep., 223). The present trial was had in Wilbarger County on a change of venue from Wichita County.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Elga Richardson by shooting him with a gun. The homicide occurred in the afternoon of January 1, 1934, just outside of the rear door of the residence of appellant. Deceased, who was the son of appellant, had been in Denton, Texas, attending school and had come home for the holidays. The mother of deceased had died sometime prior to the homicide and appellant had married again. After deceased came home he and appellant quarreled over financial matters. A few minutes prior to the homicide a controversy arose between appellant and deceased as to the use of the family car by deceased. Appellant testified that when this controversy arose deceased attacked him, knocking him down; that he secured a pistol for the purpose of protecting himself; that he finally ordered deceased out of the house; that deceased asked permission to return to the house to get his clothes; that as deceased came into the house he shoved deceased with the pistol and that it accidentally discharged; that he had no intention of shooting deceased. Appellant's testimony relative to shoving deceased with the pistol as he entered the house was in a measure corroborated by the testimony of a witness for the State who said that appellant struck deceased in the back with some object and that she immediately heard the sound of the discharge of a pistol. Another witness for the State testified that appellant pointed the pistol at deceased and fired. Appellant's daughter gave testimony to the effect that the quarrel between her father and deceased arose over the use of the family car. She was not in the room when the difficulty resulting in deceased knocking appellant down took place. Appellant testified further that after the accidental discharge of the pistol he ran to the garage for the purpose of committing

suicide, as he believed he had killed his son, but that upon being advised by his wife that his son had not been killed, he desisted. A witness for the State testified to seeing appellant run to his garage with a black object in his hand. It was uncontroverted that appellant was grief-stricken after he shot his son. Witnesses for the State testified to that fact. Appellant and several of his witnesses testified that appellant had been kind and affectionate toward deceased, and had kept deceased in school at Denton under trying financial conditions.

Appellant earnestly insists that the evidence is insufficient to warrant a conviction for murder upon malice aforethought. In view of the fact that the judgment must be reversed because of errors hereinafter discussed, we pretermit a discussion of the question.

A number of bills of exception relate to appellant's objection to testimony to the effect that he (appellant) married again within less than a year after the death of his first wife; that prior to the death of his wife and while she was ill, appellant visited in the home of his second wife and her husband; that during some of the times he visited there deceased came to said home and told him that his mother was worse, and apparently tried to get him to come home. Some of these bills relate to appellant's objection to being required to testify that he did not remember the town in Arkansas in which he married his second wife and did not know whether a proper ceremony had been performed. All of said bills are concerned with appellant's relations to his second wife. We are unable to discern the relevancy of said testimony. Relevancy is defined by Mr. Branch, in his Annotated Penal Code, sec. 97, as follows: "Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable." McGuire v. State, 10 Texas App., 127, and Lane v. State, 164 S. W., 380, are cited in support of the text. No circumstance is relevant which does not make more or less probable the proposition at issue. McGuire v. State, supra; Luttrell v. State, 40 Texas Crim. Rep., 651. Appellant's action in visiting the woman he later married during the time his wife was ill and the alleged irregularity of his marriage to her appear to shed no light upon any issue involved in the case. Appellant had not killed his first wife. If such had been the case it would probably have been relevant to show his relations to the woman he later mar-

ried. It was uncontroverted that the difficulty between appellant and deceased grew immediately out of the fact that deceased was not permitted to use the family car except when his father and step-mother were with him. The bills of exception presenting these matters are probably insufficient to be entitled to consideration, but in view of another trial the error in receiving said testimony is pointed out.

In view of the fact that it now appears that upon another trial the State will be in a position to lay a sufficient predicate for the reproduction of the testimony of one of the witnesses who resides in the State of Oklahoma, we pretermit discussion as to the sufficiency of the predicate laid upon the present trial, other than to say that we are doubtful as to its sufficiency.

It is shown in bill of exception No. 17 that one of counsel for the State, in his argument to the jury, used language as follows: "I believe that boy Elga (deceased) was a gentleman. I think he got it from his mother's side of the house. He went into that front room and he says to this man, who had been living a profligate, reprehensible life, as is shown by the evidence, he had to get him out of the household or the home of the woman whom the evidence I believe shows to be almost a prostitute, because his mother was ill."

Appellant timely and properly objected to the foregoing remarks on the ground there was no evidence justifying the argument; whereupon counsel for the State said to appellant's counsel: "I intend for it to be prejudicial." Appellant's counsel again objected, and counsel for the State said: "I will take that back. I think it will have the effect that it will have." The court failed to instruct the jury not to consider the argument, but admonished counsel for the State to stay in the record. There was no evidence in the record justifying the inference that the second wife of appellant was almost a prostitute. Nor was there any evidence from which the inference could be drawn that appellant had been living "a profligate, reprehensible life." Appellant had not placed his reputation in issue. We deem the remarks to be of such a nature as to have been obviously hurtful and prejudicial. We are constrained to hold that the bill of exception reflects reversible error. Beckham v. State, 58 S. W. (2d) 102.

Another of counsel for the State, as shown in bill of exception No, 21, in his closing argument, used language as follows: "I believe that Wilma Richardson (appellant's second wife) knows why Charlie Richardson (appellant) took the life of his boy and I know there are two reasons why she wasn't here

because of the fact notwithstanding the indictment returned against me by R. E. Taylor (one of counsel for the State) here for doing my duty as I saw it I knew had I not been on the scene on the hour of January 1st, taking the story from her lips she would have been in here telling you the weirdest kind of tale about what a terrible tragedy the accident was. I know another thing. They took a chance of making you believe that we coerced some kind of a statement from her on that occasion but we know for a fact that they couldn't establish when and where they were ceremoniously married in this land of ours."

The foregoing remarks were properly objected to, and the objection overruled by the trial judge. Appellant's wife was in Houston at the time of the trial and did not appear as a witness. There was testimony in the record to the effect that the district attorney had talked to appellant's wife shortly after the homicide. There was nothing in the record to show the nature of the statement she had made to him. The argument in effect advised the jury that if she had been present and had testified in accordance with the statement she had made to the district attorney, her testimony would have been very damaging to appellant. In short, the district attorney, in argument, supplied testimony to the effect that he had obtained a statement from appellant's wife showing that the killing was not accidental. Again, we are constrained to hold that the argument was of such a nature as to have been obviously hurtful and prejudicial. See Reed v. State, 36 S. W. (2d) 526, and authorities cited.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON STATE'S MOTION FOR REHEARING.

MORROW, Presiding Judge.—After considering the motion for rehearing upon behalf of the State, we are constrained to adhere to the conclusion announced in the original opinion.

The remarks of State's counsel during the argument to the jury, which remarks are set out in the original opinion, cannot justly be characterized as otherwise than improper and harmful to the accused. Particularly is this true with reference to the language used by counsel which is embraced in Bill of Exception No. 21, which is also copied in the opinion. The re-

marks last mentioned carried to the jury the information that on the day of the homicide counsel for the State had conversed with the wife of the appellant and received from her information in conflict with the appellant's testimony supporting his plea of accidental homicide. Nothing justifying the remarks is perceived in the record. The appellant's wife was not a witness. Her statements to counsel, whatever they may have been, were hearsay and his recital of them was not under oath. In the condition of the record, the remarks were not of a nature that could have been proved by the oath of counsel. Their damaging effect upon the vital issue in the trial is not regarded as debatable.

The motion for rehearing is overruled.

*Overruled.*