### MARVIN TAULBEE V. THE STATE.

No. 19324.     Delivered January 26, 1938.

The opinion states the case.

*Kirby, King & Overshiner,* of Abilene, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Under an indictment charging him with assault with intent to murder O. B. Fielder, appellant was convicted of an aggravated assault and his punishment assessed at a fine of $1,000 and confinement in jail for one year.

Appellant and his wife went to the restaurant of Mr. Fielder and ordered some sandwiches. While they were being prepared they left the restaurant. According to the testimony of Fielder, he followed appellant and his wife for the purpose of advising them that their sandwiches were ready. Appellant told him that he did not want the sandwiches and would not pay "for the damn things." At this juncture, according to the version of the State, the injured party advanced on appellant, and appellant said to him: "I will kill you, you damn s-of-a-b." Appellant then walked to an iron pipe, which was nearby. Fielder then picked up a piece of concrete and struck at appellant. Appellant said: "All right. I am all wrong. I will pay you." After appellant had paid him, Fielder told him to come into the house and eat his sandwiches. As Fielder started back into the restaurant appellant stabbed him in the back with a knife, inflicting serious wounds.

According to appellant's testimony, his wife had become ill while they were in the restaurant, and he had taken her outside. He had no intention of not paying for the sandwiches, and told Mr. Fielder that he would return to the restaurant and pay him. Fielder replied: "You are going to pay me now."

At this juncture we quote from appellant's testimony as follows:

"When he said he was going to have his pay now I said 'All right, I will pay you.' I asked him how much they were and he said thirty cents. I then paid him thirty cents, which I got out of my right trouser's pocket. After I paid him the thirty cents, he told me that he was tired of people coming in ordering his food and walking out on him. I said, 'I am not trying to walk out on you. I merely brought my wife out here to get some air, and we will be right back.' He kept standing there in front of me, waving his arms. * * * I said 'Well, I have paid you. Please step aside and let us go,' and we started to walk around him. He did not still have hold of me. * * * When I started to walk around him, why he stepped in front of me again and I started around the other way and he hit me, he hit me three times. After he hit me the second time I reached in my pocket and got my knife. * * * I was getting my knife out when he hit me the third time. He hit me the first time in either eye. He hit me in both eyes. He hit me in the face. * * * Those licks staggered me back, kind of knocked me off my balance. I was not fighting back at him up to that time. I had not hit him. * * * After he hit me the third time we clinched. I started cutting him then. Both of us went to the ground. After we got on the ground Mr. Fielder was on top. He hit me on the side of the head with a rock after we were on the ground. * * * That caused my head to bleed. When he hit me with the rock it kind of dazed me and kind of knocked me out for a little bit. I had the knife in my hand when I was hit with the rock. When I came to Mr. Fielder had it in his hand. * * * I went after my knife when I did for the reason that I was afraid that he was going to beat me to death. That is the reason that I cut him. I had no reasons to kill him. I didn't want to kill him. I didn't try to kill him. I wouldn't have cut him at all had he not assaulted me. At that time I realized I was not his equal."

Appellant's wife testified that Fielder assaulted appellant and threw him to the ground. Further, it was her version that he hit appellant with a rock. She said she did not see appellant cut Fielder with a knife.

It appears from bill of exception No. 1 that special prosecutor, in referring in argument to the testimony of State's witness Gann, used language as follows: "Mr. Gann told me ten days ago just what he testified to in this case from the witness stand today." It also appears from the bill that the witness

Gann had testified that appellant was the aggressor and had stabbed O. B. Fielder in the back after he turned to leave the scene of a verbal encounter near the restaurant. Further, it appears that Gann was the only witness who corroborated O. B. Fielder, the injured party. Appellant's wife was the only witness corroborating him. Gann had testified on cross-examination that he had talked to Mr. Brooks, special prosecutor, about ten days before the trial. Counsel for appellant, in arguing the case to the jury, referred to the fact that said witness had first talked to special prosecutor about the case, and, in their argument, had attacked the testimony of the witness Gann. When the special prosecutor used the language heretofore set forth appellant's objection was sustained and the jury instructed not to consider the argument for any purpose. We are unable to reach the conclusion that the court's instruction to the jury saved appellant from harm. There was no testimony before the jury that the witness Gann had made the same statement to counsel for the State prior to the trial. The argument could have been made for no other purpose than to convince the jury that the testimony of the witness was true because he had theretofore made the same statement several days before the trial. The damaging effect of such argument is not regarded as debatable. It was of such a nature as to have been obviously hurtful and prejudicial. Under the circumstances, we are constrained to hold that the bill of exception reflects reversible error. See Richardson v. State, 77 S. W. (2d) 215; Beckham v. State, 58 S. W. (2d) 102; Reed v. State, 36 S. W. (2d) 526, and authorities cited.

In his motion for new trial appellant alleged that since his conviction he had discovered that Lloyd Robertson had witnessed the difficulty and would testify that appellant did not cut the injured party as he started to leave the scene of the difficulty, but, on the contrary, the injured party attacked appellant, and, after a brief scuffle, they went to the ground. In short, the motion embraces averments showing that the witness would have corroborated appellant. The averments as to newly discovered evidence were supported by the affidavit of the witness showing that he would testify as herein set forth. Further, the affidavit discloses that the witness had told the injured party and special prosecutor prior to the trial what he had seen, but had not told either appellant or his counsel until after the trial. He had not been summoned as a witness in the case. The affidavits of appellant and his counsel are to the effect that they had not learned that the witness would give the testimony in

question until after appellant's conviction. Moreover, the affidavits are sufficient to show that appellant and his counsel had met the demand of the law as to diligence. Appellant was a stranger in the city of Abilene, where the difficulty occurred, and did not know the witness Robertson. State's witness Gann, who testified upon the trial, had told appellant's counsel prior to the trial that he did not know any person who was present and saw the fight. The only witnesses summoned by the State were Mr. Fielder, the injured party, and C. O. Gann. Upon the hearing of the motion appellant introduced in evidence the affidavits to which we have referred. These affidavits were not controverted by the State in any manner. The new testimony was manifestly material, and would strongly corroborate appellant's version of the transaction. It is true that appellant's wife corroborated him, but this does not bring the alleged newly discovered testimony within the general rule that newly discovered evidence which is merely cumulative of that received at the trial will not warrant the granting of a motion for new trial. This rule is not invariably applied. We quote from 31 Tex. Jur., 289, as follows:

"Thus where the witnesses who testified in favor of the accused were impeached or shown to be biased, in some circumstances a new trial may be granted in order to receive the testimony of a witness who is free from the taint which attached to those who testified upon the trial."

In support of the text the following cases are cited: Beland v. State, 217 S. W., 147; Whatley v. State, 36 S. W. (2d) 751; Abramson v. State, 47 S. W. (2d) 303. We are constrained to hold that the court fell into error in overruling the motion for new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.