# APRIL 8, 1942

RUSSELL DE FORD V. THE STATE.

No. 21925. Delivered February 11, 1942.
Rehearing Denied April 8, 1942.

The opinion states the case.

*A. U. Puckett,* of Kaufman, and *Grady Niblo,* of Dallas, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft of cattle. The punishment assessed is confinement in the State penitentiary for a term of two years.

The record shows that appellant and John Taylor were neighbors; that their residences were located approximately 400 or 500 yards apart; that on or about the 8th day of February, 1940, appellant took two Jersey calves belonging to Mr. Taylor without his consent and carried them to Dallas, where he sold them to Swift & Company. About eight o'clock on the morning of the day of the alleged theft, Mr. Taylor passed within a short distance of the appellant's cow lot and noticed two of his calves in the appellant's pen. About ten o'clock on

the same morning he came back by appellant's premises and noticed that the calves were not in the pen; that appellant was not at home and that his automobile and trailer were gone. Mr. Taylor then went over to the premises of two of his neighbors in search of appellant. Failing to find him there, he went back to the appellant's place and finally found him. He asked appellant if he had seen the calves. At first appellant said, "No," but later said "he believed they were here this morning." Taylor said he knew they were because he had seen them. Appellant replied, "I guess they are around here somewhere." Taylor went back that night to be sure but the calves were not around there. He talked to appellant in his cow lot, who said, "Surely they wouldn't run off." Taylor went back the next morning and told appellant that if he wanted to pay for the calves he would not prosecute him, but if he didn't, he was going to "stick him" if he could. Appellant then denied getting the calves.

The testimony of the witness, Dennis Shipley, is in substance to the effect that he had gone with Taylor to Dallas and found that appellant had sold the calves to Swift & Company. He then went to appellant and told him that Taylor had found out that he (appellant) had sold the calves; that appellant said he could sell his own calves. He said: "I taken two calves up there and they were mine, and I sold them." Shipley further testified that appellant said that he would have the money Monday morning and that he would pay Taylor for the calves.

Appellant took the witness stand upon the trial and admitted taking Mr. Taylor's calves to Dallas and selling them. He claimed, however, that Taylor's cattle had been depredating on his feed crop and had destroyed quite a quantity of feed; that he did not take the calves with a view of stealing them but to sell them and recompense himself in part for the feed which Mr. Taylor's cattle had destroyed.

Appellant challenges the sufficiency of the evidence to support his conviction. He takes the position that the evidence fails to show that at the time he took possession of the cattle in question he had the intent to appropriate the same to his own use and benefit. He claims that the evidence adduced by him at the trial shows that the cattle in question had entered upon his premises about a week or ten days prior to the time that he sold them, and that this was the time that he took possession thereof; and since there is no evidence that he

entertained the intent to appropriate the cattle at that time but conceived the idea later, that is, on the day that he sold them, the conviction cannot stand, notwithstanding the fact that the State's evidence shows that the first time the cattle were on the appellant's premises was on the morning of the day that he put them in the pen, carried them to Dallas and sold them. This, at least, raised an issue as to when he entertained the intent to appropriate the cattle, which issue the jury decided adversely to his contention. Moreover, the evidence shows that Mr. Taylor went to see appellant after he had returned from Dallas and inquired of him as to what had become of the cattle, but appellant said he did not know. Mr. Taylor went back to the appellant's home that night and also the next morning, and made inquiry of him as to the whereabouts of the cattle, but on each occasion he disclaimed any knowledge of what had become of them. It strikes us that even if the cattle had trespassed on the appellant's premises, he had not taken physical possession of the same until he put them in the pen and got them under his control. As long as they were running at large, although on his premises, his possession was not antagonistic to that of Taylor. His possession of the cattle became adverse to that of Taylor when he put them in the pen with a view of disposing of them and appropriating the proceeds of the sale thereof to his own use and benefit. It happens at times that cattle wander away from home and enter the premises of another, but such act does not deprive the owner of the constructive possession of the cattle.

Appellant cites us to the cases of Thornton v. State, 127 S. W. (2d) 197; Price v. State, 125 S. W. (2d) 574, and a number of others. All of these cases are distinguishable on the facts. The case of Veasly v. State, 85 S. W. 274, was reversed because the court refused to instruct the jury "that if the original taking of the hogs was lawful and without fraudulent intent, and the intention to appropriate them was subsequently formed appellant could not be convicted." But no such question is presented by the record in the present instance. There is no complaint of the court's failure to so instruct the jury, nor was any request made for such instruction. The careful trial judge gave every charge which appellant requested.

By Bill of Exception No. 1 appellant complains of the action of the court in overruling his application for a continuance based upon the absence of his wife who had undergone an operation and was too ill to attend court; that he expected

to prove, and would prove by her if she were able to attend court, that Mr. Taylor's cattle did destroy quite a quantity of appellant's feed crop. This application was contested by the State. The record discloses that the indictment was returned against appellant on the 19th day of February, 1940, and the case was set for trial on March 13th, at which time it was continued on appellant's application. The case was then set for trial on July 17th, at which time it was again continued at the request of appellant. On December 2nd the case was set for trial on December 16th, at which time it was again continued by reason of the illness of the appellant. The case was finally set for trial on Monday, July 22, 1941, at which time he filed this application for a continuance which the court overruled, and of which he now complains. This was a subsequent application, and the granting or refusal of such an application rests within the sound discretion of the court; and this court would not be authorized to disturb his judgment unless it is made to appear that the court abused his discretion with respect thereto. See Campbell v. State, 138 S. W. (2d) 1091, and authorities there cited. However, if it be conceded that the appellant's wife would have testified as claimed by him, we fail to see the relevancy of such testimony. The fact, if it be a fact, that Taylor's cattle did destroy much of his feed crop, this would not justify appellant in taking Taylor's cattle, selling them and appropriating the money to his own use and benefit.

By Bill of Exception No. 2 appellant complains of the action of the District Attorney, on re-direct examination of Mr. Shipley, in asking him if the unfriendly relations which existed between appellant and Mr. Taylor were after he (appellant) had stolen Taylor's cattle. Appellant objected thereto because it was asserting as a fact that he had stolen the cattle, but before the court ruled upon the objection the District Attorney addressed the following question to the witness: "All right, at the time Russell DeFord told you or explained something about the negro, that was at a time when he had already stolen and sold John Taylor's cattle?" To which appellant again objected upon the same ground as above stated. The court overruled the objection and the witness answered, "Yes, sir"; to which appellant excepted. The record shows that appellant, on cross-examination, elicited from the witness that the relations between appellant and John Taylor had been unfriendly for some time because Taylor had permitted his cattle to depredate on appellant's feed crop, and because he (Taylor) had persuaded a negro tenant to leave appellant while he owed

him about $250.00 or $300.00 in order to become his (Taylor's) tenant. It is obvious from the foregoing statement that appellant opened the inquiry relative to the origin of the unfriendly relations and the cause thereof as he viewed it. Consequently the State had a right to inquire of the witness when the unfriendly relations first began and the cause therefor. The fact that the District Attorney so framed his question as to assert that appellant stole Mr. Taylor's cattle would not, under the facts of this case, show such error as would require a reversal of the judgment. Appellant received, at the hands of the jury, the lowest punishment prescribed for the offense charged.

Bill of Exception No. 3 reflects the following occurrence: After appellant, on his direct examination, had testified that he had been engaged in different "businesses" since 1910, and that he ran a store out on Brushy Creek in 1936, the District Attorney asked him on cross-examination the following question: "You were living out there, working out there in this store, running whatever kind of a joint it was, on Brushy Creek?" To which interrogatory appellant objected as being prejudicial, and asked the court to instruct the jury to disregard that portion of the question referring to "whatever kind of a joint it was." The court overruled the objection and appellant duly excepted to the ruling. Appellant first brought to the attention of the jury the fact that he ran a store on Brushy Creek in 1936, and the State merely referred to it as a "store" or "whatever kind of a joint it was." We fail to understand how or in what manner the question could have injuriously affected his legal rights or prejudiced the jury against him.

Bill of Exception No. 4 reflects that after the District Attorney had made the inquiry complained of in Bill No. 3, he propounded to appellant the following question: "And you stayed out there until the officers finally moved you out?" To which appellant objected on the ground that it was prejudicial. The objection was overruled and appellant excepted. The bill fails to disclose that the witness made any reply thereto; hence it is deficient. While the inquiry was not pertinent, yet we fail to perceive how it was hurtful to appellant.

Finding no error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant has filed a motion for rehearing supported by written argument and brief, and also by oral argument.

The motion presents no questions not considered on original submission. Believing the correct disposition has been made of the case it is not thought necessary to write further.

The motion for rehearing is overruled.