Jerry Michael WARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 40856.

Court of Criminal Appeals of Texas.

Jan. 10, 1968.

Rehearing Denied April 10, 1968.

Second Rehearing Denied May 22, 1968.

Thomas D. White, Charles A. Easterling, Houston, for appellant.

Carol S. Vance, Dist. Atty., Richard M. DeGuerin and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

## OPINION

The offense is murder; the punishment, death.

In addition to the grounds of error set forth in appellant's brief his counsel, in oral argument, advanced the contention that the indictment was fatally defective and did not allege the name of the person alleged to have been murdered.

Under authority of Art. 40.09, Sec. 15, Vernon's Ann.C.C.P., we directed the district clerk to send to this court for its inspection the original indictment.

An inspection of said original indictment furnished no aid except to account for the condition of the reproduction of the indictment which appeared in the record on appeal. However, the record has been supplemented and such supplement duly certified by the clerk has been forwarded to this court by order of the trial judge. It includes a carbon copy of the indictment bearing the certificate of the district clerk dated November 1, 1965, (the date the indictment was filed) showing it to be a true and correct copy of the original indictment; and shown by affidavits, including those of two deputy district clerks, the court reporter and the trial judge, to be a correct copy of the original indictment.

Appellant's motion to strike the supplemental transcript which contains a certified copy of the original indictment is overruled.

The indictment alleged that appellant, on or about the 18th day of October A. D. 1965, "* * * did with malice aforethought kill Joyce Osten by shooting her with a gun."

■ The first ground of error set forth in appellant's brief is that the evidence is insufficient to sustain the conviction.

The testimony shows that Joyce Osten was an 18 year old high school girl whose father was a service station operator and whose mother worked at Battlestein's Store in Sharpstown Shopping Center, in Houston.

On October 18, 1965, Joyce accompanied her mother to the shopping center, her purpose being to apply for a part time job at several stores. Mrs. Osten got out of their 1959 green Cadillac at the rear entrance to Battlestein's about 9:50 A.M. and told Joyce to take the car and park it near a Mall entrance and come in. This was the last time Mrs. Osten ever saw her daughter.

When Joyce did not meet her mother as planned, Mrs. Osten contacted her husband who notified the Houston police.

The witness Joanne Kelly testified that at about 11:00 A.M. she saw the green Cadillac run a stop sign as it approached an intersection from the direction of Sharpstown Center. She identified appellant Jerry Michael Ward as the driver and described the other occupant as "a young girl with light colored hair."

Doris Rodden testified that at about 11:30 she and her husband, Stafford Rodden, went to Attaway's Grocery in Alief, Texas, where she saw the Cadillac with a young couple seated in it. She identified appellant as the man behind the wheel and identified a picture of Joyce Osten, the deceased, as the girl who was in the car with appellant and who seemed unhappy and had a frown on her face.

Stafford Rodden also identified appellant as the man he saw behind the wheel in the Osten's Cadillac, parked at Attaway's Grocery at about 11:30 A.M., and testified that the other occupant was a young lady with blond hair who looked to be about 17 or 18 years old.

Alvin Robinson, who ran a Texaco Service Station in Alief, Texas, testified that at about 11:30 A.M. the Cadillac, occupied by a neatly dressed man and a nice looking girl, pulled up in his driveway and the man bought a dollar's worth of gas from him and left.

Gilbert Lopez and Robert Lopez, his twin brother, each testified that at about 11:30 A.M. he saw a green Cadillac occupied by a man and a woman entering a pasture off Renn Road.

Anita Topia testified that at about 3:15 in the afternoon she saw the Osten Cadillac make a "U" turn on Renn Road near Howell, the man driving being the only occupant.

Later in the day the Cadillac was found on the Sharpstown Center parking lot. In it was Joyce's pantie girdle with the hose still attached.

Bob Conrad, dog trainer and kennel operator, testified that in the afternoon, in a pasture leased by him for hunting purposes, (which was shown to be the pasture the twins saw the Cadillac enter) he discovered a spray net can, two compacts, and a brush (which were later identified as belonging to the deceased) and notified the sheriff's department of his findings.

All of the foregoing testimony related to October 18, 1965.

The next morning Conrad joined a searching party and, during the search in the pasture, found the body of the deceased Joyce Osten, dressed only in brassiere and a blouse which had been pulled over her face.

Sticks had been piled on the body and a rope and a pair of panties were found nearby.

Dr. Robert Bucklin, Associate Harris County Medical Examiner, testified that he performed an autopsy on the body of Joyce Osten on October 19, 1965, at about 2:00 P.M. His testimony shows that the time of death was approximately 2 P.M. on October 18, 1965, (24 hours before the autopsy).

Dr. Bucklin testified that he found four gunshot wounds, three in the back of the young girl's head and a fourth in the middle of the back of her neck, and that he turned over to Police Officer P. J. Nix the bullets or fragments he recovered from her skull and neck.

Dr. Bucklin further testified that male sperm was found in the vagina of the girl which, in his opinion, was placed there about the time of her death.

Also Dr. Bucklin found a small abrasion above the deceased's right eyebrow, such as would have been consistent with her being struck with a hand or fist; and a mark on her right wrist and hand consistent with her having been tied with a rope.

James Green testified that he found a purse in the pasture off Renn Road on October 20, 1965. The purse was later identified by Mrs. Osten as the purse of the deceased.

Mrs. Sally Stump testified that appellant rented an apartment from her in September, 1965, and the day he moved in gave her a small 22 caliber pistol. Thereafter, on October 25, 1965, appellant told her that he had given her the wrong gun, and gave her another similar pistol in exchange, which she turned over to Police Officer J. E. Tucker on October 29, 1965.

The pistol delivered to J. E. Tucker was shown by expert testimony to have been the pistol from which one of the bullets which took the life of Joyce Osten was fired.

Other evidence offered for the purpose of identifying appellant as the man who raped and murdered Joyce Osten was the testimony of Houston Police Chemist and Toxicologist, Floyd McDonald, that a pubic hair taken from appellant compared identically in all characteristics to the two foreign pubic hairs he recovered from the body of Joyce Osten.

We find the evidence sufficient to sustain the conviction.

■ The second ground for reversal is that the court erred in not granting appellant's motion for change of venue.

Appellant challenges the sufficiency of the state's controverting affidavit because it was sworn to before an Assistant District Attorney of Harris County. The

state contends that appellant's motion for change of venue is fatally defective in that it does not reflect that the compurgators are residents of Harris County, the county where the prosecution was instituted.

The trial court heard the evidence adduced by appellant in support of his motion for change of venue and which related to the means of knowledge of the compurgators and the existence of prejudice without objection, hence any insufficiency or defect in the state's controverting affidavit was not prejudicial. Davis v. State, 19 Tex.App. 201; Lemons v. State, 59 Tex. Cr.R. 299, 128 S.W. 416.

 In support of his motion for change of venue appellant offered in evidence some 41 newspaper articles and 80 radio announcements referring to the case, and argues that these and other facts and circumstances set out in his brief show that he was tried largely by the news media.

There is no showing in the record that appellant exhausted his peremptory challenges or that any juror who had formed an opinion as to appellant's guilt or innocence served on the jury. See Cotten v. State, Tex.Cr.App., 406 S.W.2d 452, and cases there cited.

"The trial court has discretion in passing upon change of venue, and the applicant for a change of venue has the burden to prove the existence of the prejudice against him preventing a fair and impartial trial, such issue to be determined by the trial court." Jolley v. State, Tex. Cr.App., 363 S.W.2d 269, citing Handy v. State, 139 Tex.Cr.R. 3, 138 S.W.2d 541; Richardson v. State, 126 Tex.Cr.R. 223, 70 S.W.2d 1003.

"It has been held that newspaper publicity, alone, does not establish prejudice or require the change of venue." Jones v.

State, 156 Tex.Cr.R. 248, 240 S.W.2d 771.

In Mendez v. State, Tex.Cr.App., 362 S. W.2d 841, purported television, radio and newspaper reports that the district attorney had stated that defendant had been charged with an offense and was one of 12 whom the district attorney most wanted to convict and most wanted to see in the penitentiary did not warrant change of venue on the basis that defendant could not reasonably expect a fair trial in the county.

As we construe the decision of the 5th Circuit Court of Appeals in Pamplin v. Mason, 364 F.2d 1, the record herein does not sustain appellant's contention that he "was tried largely by the news media," or was denied due process of law by the court's failure to change the venue. Appellant's second ground of error is overruled.

The third ground of error relates to the overruling of appellant's third motion for continuance.

 The motion failed to comply with Art. 29.07 V.A.C.C.P. for which reason alone its denial is not before us for review. See Perkins v. State, 120 Tex.Cr.R. 399, 46 S.W.2d 672; Williams v. State, 120 Tex. Cr.R. 288, 49 S.W.2d 772; Barrett v. State, 9 Tex.App. 33.

 We further note that the motion was upon equitable rather than statutory grounds and the action of the court thereon was discretionary with the trial judge and no abuse of such discretion appears. DeFord v. State, 143 Tex.Cr.R. 618, 160 S.W.2d 251; Kincheloe v. State, 146 Tex. Cr.R. 414, 175 S.W.2d 593; Johnson v. State, 155 Tex.Cr.R. 444, 236 S.W.2d 147; Duncan v. State, 170 Tex.Cr. 132, 339 S. W.2d 220.

The fourth ground of error relates to the court's charge and is without merit.

The fifth ground of error complains that the court erred in refusing to permit appellant to make a jury argument in his own behalf. He cites as his authority Art. 1, Sec. 10 of the Constitution of Texas, Vernon's Ann.St. and Art. 1.05 of the 1965 Code of Criminal Procedure, both of which provide in part that in all criminal prosecutions the accused " * * * shall have the right of being heard by himself, or counsel, or both * * *."

Appellant was represented by able counsel, one of whom stated to the court that the other was "worn out," and that appellant wanted to argue in his own behalf. The court denied such request and both of appellant's court appointed counsel presented oral argument.

Appellant did not elect to take the stand and testify as a witness in his own behalf. The state's position is that the request was merely an attempt by the appellant to testify before the jury without subjecting his testimony to cross-examination.

The question presented has been decided by this court contrary to appellant's contention. Leahy v. State, 111 Tex.Cr.R. 570, 13 S.W.2d 874. See also Peterson v. State, 156 Tex.Cr.R. 105, 235 S.W.2d 138; Christoph v. State, 166 Tex.Cr.R. 453, 314 S.W.2d 840; Foster v. State, 148 Tex.Cr. R. 372, 187 S.W.2d 575. See also Thompson v. State (Fla.App.) 194 So.2d 649.

As his ground of error No. 6, appellant contends that the trial court erred in not granting appellant's motion for a mistrial because of the errors committed by Mr. Ernst (Assistant District Attorney) and Mr. Vance (District Attorney) in their arguments to the jury.

This ground of error seeks to join in one complaint a number of separate and distinct remarks, some made by the District Attorney and others by his Assistant, whereas Art. 40.09, Sec. 9, V.A.C.C.P., requires that the brief of the defendant "* * * shall set forth separately each ground of error of which defendant desires to complain on appeal."

No objection appears to have been made to the remarks of the District Attorney. The remarks of the Assistant District Attorney referred to in the brief include those to which objection was made and sustained and the jury instructed to disregard, and were not such as to require that the court sustain a motion for mistrial.

Ground of error No. 7 complains that it was error to deprive him of his right to an examining trial.

The indictment was returned November 1, 1965. The trial began September 19, 1966.

Art. 16.01 V.A.C.C.P. provides in part that "the accused in any felony case shall have the right to an examining trial before indictment * * *."

The request for an examining trial after indictment came too late. See Trussell v. State, Tex.Cr.App. 414 S.W.2d 466. See also Collins v. Beto, D.C., 245 F.Supp. 639.

Ground of error No. 8 complains of the failure of the court to sustain appellant's challenge for cause to the prospective juror Brightwell, which he alleges made it impossible for him to challenge "all of the contaminated jurors from the Pittman trial."

The juror Brightwell, in answer to the court's inquiry on voir dire, stated that he had no opinion as to the guilt or innocence of the defendant and could follow the court's instruction and exclude any matters not in evidence before him in arriving at his verdict in the case.

Further, this juror did not serve on the case and the record does not support appel-

lant's contention that jurors from the Pittman case were "contaminated" and the exercise of a peremptory challenge on the juror Brightwell made it impossible for him to challenge all of them.

Ground of error No. 9 complains of the introduction in evidence of a picture of the hand of the deceased showing the marks which Dr. Bucklin testified were consistent with marks made by being tied with a rope. The ground of error is without merit.

Ground of error No. 10 complains that the court erred in permitting the witness Joanne Kelly to bolster her testimony by showing that she picked appellant out of a lineup. We see no error. The witness testified that she saw appellant in the Osten Cadillac and was asked and answered:

"Q. Did you have an occasion any time after that particular day to see the defendant Jerry Michael Ward again?

"A. Yes, sir. It was about a week or maybe a little longer that I identified him in a lineup * * *"

While another witness would not be allowed to bolster her testimony by testifying that she had identified appellant in a police lineup, Joanne Kelly's testimony that she did so was not improper. See Lyons v. State, Tex.Cr.App., 388 S.W.2d 950; Lucas v. State, 160 Tex.Cr.R. 443, 271 S.W.2d 821, 823.

Ground of error No. 11 complains that the trial court erred in denying appellant's motion for mistrial after the prosecutor proved appellant was guilty of wearing a Marine Lieutenant's uniform, even though he was not in the Marines.

During the direct examination of Mrs. Stump, who rented an apartment to appel-

lant and thereafter delivered to the police the murder weapon given her by appellant, in exchange for another he had previously given her, she testified:

"Q. And when you first saw Jerry Michael Ward, how was he dressed?

"A. He had on a Lieutenant's uniform.

"Q. Of which branch of the service?

"A. The Marines.

"Q. Did you later find out he wasn't even in the Marines * * *"

The last question was not answered, and the jury was instructed to disregard the question. Also, testimony from another witness was admitted without objection that appellant was not in the armed services.

Ground of error No. 12 complains that it was error for the state to produce the "big knife" in court before the jury and the motion for mistrial should have been granted.

The record reflects that at the time of his arrest a knife was seized by the arresting officer which was not introduced in evidence. The record further reflects that the knife in the possession of the District Attorney was not brought to the attention of or displayed before the jury.

The ground of error is overruled.

The 13th and last ground of error complains that the court erred in permitting the witness McDonald to testify as to atomic reactivator tests and their results, McDonald not being qualified by experience, not having run tests, and said tests not having been proved to be trustworthy.

In addition to his testimony as to the microscopic comparison of the pubic hairs, and after appellant's counsel in his exami-

nation of Dr. Bucklin had suggested atomic reactivator tests as perhaps more reliable than microscopic examination, the state recalled Chemist and Toxicologist Floyd McDonald who satisfied the court as to his qualifications. McDonald testified that from his experience and education he felt that he was qualified to testify as to the results of such tests; that he could perform the test and form an opinion as to the results of such test. He was then permitted to testify that neutron activation tests were run at the Atomic Reactivator at Texas A. & M. University at College Station on the hair samples coming from appellant and the loose hairs found on the body of Joyce Osten; that such tests were run under his direction; that he and Dave Mueller were present and saw the entire tests and that he understood the chemical process that was at work and as to how these tests operate.

Mr. McDonald was also permitted to testify as to the neutron activator test so conducted and to express his opinion from his microscopic comparison corroborated by the neutron activation test that the two hairs taken from the victim and those taken from the appellant were identical and probably came from the same person.

The ground of error is overruled.

The judgment is affirmed.

OPINION

ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Judge.

Appellant re-urges his ground of error and by petition for writ of certiorari and for writ of mandamus seeks to have such motions and the bystanders affidavits in support thereof included in a supplemental transcript and sent to this court to be considered in support of his claim that the indictment is fatally defective.

Considering the matters sought to have been included in the supplemental transcript as properly before us, we remain convinced that the indictment is not fatally defective and that the appeal was properly disposed of on original submission.

Appellant's motion for rehearing is overruled.