# MAY 29, 1940

## FATE CAMPBELL V. THE STATE.

No. 20759. Delivered January 10, 1940.
Rehearing Denied April 17, 1940.
Request for Leave to File Second Motion for Rehearing
Denied (Without Written Opinion) May 29, 1940.

The opinion states the case.

*M. E. Lawrence,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder; the punishment assessed is confinement in the State penitentiary for a term of ten years.

By bill of exception number one, appellant complains of the action of the trial court in declining to instruct the jury to return a verdict of not guilty on the grounds that the evidence was not sufficient to authorize and sustain his conviction.

The testimony adduced by the State, briefly stated, shows that appellant operated a still on the Hitson place, located north of the town of Cisco in Eastland County. The deceased knew of the still's location and on the morning of April 2, 1936, he, accompanied by two friends, Quenville Ingram and Herman Notgrass, drove from Cisco to its location. They found it in operation but no one was present. A short distance away they located some hidden whisky, a part of which they drank. Then they returned to Cisco. The deceased told his companions that the still belonged to his brother but that appellant had stolen it. After dark the deceased and two friends went back to the still and moved it about a mile from where it had been located to a ravine. In the meantime someone had removed the distributor cap to their car in which they were riding, and upon their return, they found that it would not start. The deceased went to town and brought back with him another cap. After repairing the car, deceased's companions got into the car and started out of the premises with the deceased following in his own coupe. Just after the first car had gotten off the premises, lights from a parked car were flashed on them and some shots were fired. The men speeded up and a few minutes later heard another shot. After driving some distance, they noticed that the deceased was not following them and turned around and went back. They found the deceased's car standing on the side of the road, lights burning and motor still running. The body of the deceased was lying on the ground nearby. They immediately hurried to town and reported the matter to the police who found deceased dead from a bullet wound in his chest.

Bert Bradley testified that he went with the appellant and two other parties on the afternoon in question to the still to

get some whisky, but found that it had been moved. They then returned to Cisco but later went back. Before going the second time, appellant and one of the other men armed themselves with shotguns. They also had a 38-calibre pistol in the glove compartment of the car. On their first trip to the still, they found a car parked on a hill nearby and appellant took something off it to prevent the parties from driving away. When they went back the second time it had gotten dark, and they parked their car on the opposite side of the road and waited for the parties to come out. They had not waited long before the first car came out of the pasture. Bradley fired the first shot at them with a shotgun and then appellant drove his car in front of the deceased's car and walked back to talk to him. The witness did not see the shooting, but testified that he heard two shots fired. That just before these shots were fired, appellant and the deceased were standing on the right side of the car. The parties then drove back into town. On the same night, appellant, his wife and Bradley went to Big Spring, about 150 miles away, and from there to Midland; then they went back to Big Spring where appellant's father-in-law met them and they returned to Cisco. The bullet taken from the deceased's body by the undertaker was a 38-calibre bullet. It entered the body in the chest

Appellant did not testify or offer any affirmative defense. We deem the evidence sufficient to support the jury's conclusion of appellant's guilt.

By bill of exception number one, appellant complains of the action of the trial court in overruling his motion for a continuance based on the absence of one George Bryant, who was an employee of the alcoholic unit of the Treasury Department of the U. S. located at Fort Worth, by whom he stated that he expected to prove and would prove that Bryant made some investigation in connection with the offense charged. That he filed a charge against appellant in the United States District Court for the possession of a still and whisky. In construing the allegations in the application as to what appellant expected to prove by said witness, it is our conclusion that they amount to nothing more than that Bryant filed a complaint against him charging him with the operation of a still and the possession of whisky. Just how this testimony was material to any defense of the appellant is not made to appear from the record and we fail to see the materiality of the same. See Sec. 312 Branch's Ann. P. C., pp. 184-185 and authorities cited. Moreover, the court in his order overruling the motion states that it

was a second application. This being true, the matters as they are recited in the application rested within the sound discretion of the trial court.

Appellant, in due time, addressed a number of objections to the court's charge. By his bill of exception number four, appellant specifically objects to the charge on the ground that the court declined to instruct the jury that if the defendant's property were stolen by the deceased, or others acting with him, the defendant would have a right to approach him either armed or unarmed in seeking a return of said property. We do not think the evidence called for any such instruction. The appellant did not claim self-defense; he did not know that the deceased had stolen his still or his liquor; he merely suspected it. The record is silent as to what appellant's object was when he drove his car in front of the deceased's and shot him. We fail to see under just what theory he was entitled to such an instruction. We have examined the other objections to the charge in the light of the criticisms addressed thereto and reached the conclusion that the charge is not subject to the objections.

All other matters complained of by appellant have been carefully examined by us and are deemed to be without merit.

No error of a reversible nature appearing in the record, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant urges that the witness Bradley was an accomplice witness, that his evidence was necessary to a conviction and that there is no sufficient corroboration of his testimony; hence he insists that the judgment should be reversed under Art. 718 C. C. P., which precludes conviction on the testimony of an accomplice witness unless corroborated as required by said article.

The learned trial court did not instruct on the question as to whether Bradley was an accomplice witness. From the fact that the charge was not excepted to for said omission nor any special charge on the subject requested we might conclude that

at the time of the trial appellant did not seriously think Bradley was an accomplice witness. However, if this court should find that he was an accomplice witness as a matter of law, not sufficiently corroborated, and that a conviction could not stand without his testimony, appellant would be entitled to a reversal on account of the failure of the evidence to support the judgment of conviction.

Appellant was operating a still on the "Hitson place" several miles from Cisco. In the forenoon of April 2, 1936, Notgrass, Ingram and Buford Tarver (the deceased) went to said still in Notgrass' car. It was claimed by deceased that the still belonged to his brother and he wanted to retake possession of it and move it. Notgrass objected to moving the still in his car. The three parties went back to Cisco and returned to the still later, deceased driving his own car and Notgrass driving his car. Notgrass parked his car some distance from the still, which was then loaded on deceased's car and moved. Appellant, Bradley and Elliott went to the still and discovered it had been moved. They did not see deceased's car, but saw the Notgrass car, and appellant removed from it the distributor cap so the car would not run. Appellant and the two parties with him then went back to Cisco, but returned after dark in appellant's car which they parked near the gate into the "Hitson" pasture. In the meantime deceased and his companions (Notgrass and Ingram) had discovered the absence of the distributor cap from Notgrass' car and deceased went to Cisco, secured another cap, returned to the pasture and placed it on the Notgrass car. Ingram and Notgrass, in the latter's car, then started back to Cisco. As they passed out at the gate or gap near which appellant's car was parked, shots from a shot gun were fired from appellant's car. None of the shot struck the Notgrass car. He and Ingram proceeded towards Cisco and appellant's car soon followed it. At this time deceased's car apparently was still in the pasture. Bradley's connection with the transaction is learned through his own testimony. He lived at Big Spring, some 150 miles from Cisco. A party by the name of Gunn had brought Bradley to Cisco on the day of the killing. We gather from the evidence that he had some business with appellant, but the nature of it is undisclosed. It seems clear that it had no reference to the killing because the thing out of which the homicide grew—the moving of the still—had not yet occurred when Bradley arrived in Cisco. He, Elliott and appellant went to the location of the still in appellant's car and discovered that the still had been

moved. They also found Notgrass' car from which appellant removed the distributor cap. They never saw the car of deceased. Appellant, Bradley and Elliott went back to Cisco, but later returned to a point near the gate leading into the "Hitson" pasture. They either already had a shot gun in their car or secured one when they returned to Cisco. As the Notgrass car came through the gate from the pasture Bradley fired the shot gun. He testified that he did not shoot at anybody; but fired to scare them, as his party wanted to find out who was in the car coming out of the pasture, evidently believing they had moved the still. Bradley's claim that he was not trying to hurt anybody is borne out by the fact that none of the shot from the shot gun even struck the Notgrass car. Bradley testified that after the Notgrass car proceeded towards Cisco appellant started his car and followed it. Soon another car, which turned out to be deceased's, overtook appellant's car and stopped to one side of the road. As appellant's car passed he said he thought he knew who was driving the other car and wanted to talk to him, whereupon appellant stopped his car a few steps in front of the other car, got out and went back to the other car. Bradley testified that he did not know who was in the other car when appellant went back towards it and did not know that appellant had a pistol with him at the time, although he had seen a pistol in the glove compartment sometime during the day. After some loud talking, which Bradley could hear but did not understand, two pistol shots were fired back at deceased's car. Appellant then came to his own car, got under the wheel and proceeded to Cisco. Appellant took Elliott home, got his wife and then drove to Big Spring, taking Bradley with them in appellant's car; Gunn, who had brought Bradley to Cisco, having already returned to Big Spring. It was late at night when they arrived. Bradley's wife was not at home and he let appellant and his wife occupy his (Bradley's) room for the night, Bradley spending the remainder of the night with Gunn. The next day appellant returned to Cisco and surrendered to the officers.

Because of appellant's insistence that Bradley was an accomplice witness we have detailed at some length his connection with the killing. We entertain serious doubt if the evidence even raises an issue of fact upon the point mentioned. Certainly it does not characterize him an accomplice witness as a matter of law. It would only be in the latter event that appellant's contention that the judgment should be reversed for lack of corroboration could be sustained. Pitts v. State, 85 Tex. Cr. R. 14, 210 S. W. 199.

The only other matter urged in the motion for rehearing is that the trial court erred in refusing to permit appellant to develop on cross examination of the witness Stephens some conversation with appellant, a part of which he contends the State developed. The bill is defective in failing to show what the conversation was. It merely states that he had a conversation. We observe that the statement of facts leaves the subject in the same condition. Stephens testified that he had a conversation with appellant, but never goes any further.

Believing the case was properly disposed of on original submission, the motion for rehearing is overruled.