**KINCHELOE v. STATE.**

No. 22590.

Court of Criminal Appeals of Texas.

Oct. 27, 1943.

Rehearing Denied Dec. 8, 1943.

594

Art Schlofman, of Dalhart, and Clem Calhoun, of Amarillo, for appellant.

Spurgeon E. Bell, State's Atty., of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of six years.

Appellant was indicted in Dallam County for the murder of his son, Clark Kincheloe. The case was transferred on a change of venue to Potter County, where his conviction was had.

Appellant filed a motion in the District Court of Potter County challenging its jurisdiction and prayed that the case be dismissed. The grounds for the dismissal of the case are predicated upon the following allegations: That the judge of the District Court of Dallam County, on the 18th day of November, 1942, ordered a change of venue to the 47th District Court in and for Potter County; that said order was never filed with the clerk of the District Court of Dallam County but was filed, for the first time, with the clerk of the District Court of Potter County on November 20, 1942, together with all the original papers in the case; that at the time the purported order to change the venue was made the defendant was not in custody of the sheriff but was on bond; that the court did not require the defendant to enter into a recognizance or remand him to the sheriff to be kept in custody and then to be delivered to the sheriff of Potter County, as required by Articles 571 and 572, Code Criminal Procedure, but told the defendant that he may go; that he was taken in charge by the sheriff of Dallam County and delivered to the sheriff of Potter County on the 5th day of February, 1943; that the defendant was not under bond or in custody at the time this case was set for trial and a special venire was ordered. The order changing the venue in this case appears in the record and contains, among other things, the following:

"It is further ordered that he (defendant) forthwith enter into recognizance in the sum of $7,500.00 conditioned for his appearance before the District Court of Potter County, Texas, at the present term of said court on the 20th day of November, 1942, and there remain from day to day and from term to term of said court until discharged, to answer said indictment herein.

"And the said defendant is now committed to the custody of the sheriff until he

enters into said recognizance and in default of his entering into said recognizance the sheriff shall remove him to said Potter County and deliver him to the sheriff of Potter County, Texas, on the 20th day of November, 1942. * * * and the Clerk of the District Court of Dallam County, Texas, shall fill out a true transcript of all orders made and the proceedings had in the District Court of Dallam County, Texas, in this cause and together with all papers filed herein including the indictment * * * and transmit same to the Clerk of the District Court of Potter County, Texas, as required by law, together with the recognizance of the defendant and list of witnesses if any in this cause."

It appears that the clerk complied with the order of the court. We find nothing in the record which sustains appellant's allegations in the motion. If appellant did not enter into a recognizance, was not taken into custody by the sheriff of Dallam County and delivered to the sheriff of Potter County as ordered by the court, it would have been an easy matter to have made proof thereof. We are not to be understood as intimating that error would have appeared had such proof been made. Ex parte Haley, 88 Tex.Cr.R. 649, 228 S.W. 208.

 By Bill of Exception No. 1 appellant complains of the court's action in overruling his second application for a continuance based upon the absence of his son, J. P. Kincheloe. It appears from the record that at and before the killing this witness was in the military service of the United States of America, but was present at court in Dallam County on the 15th day of November, on leave of absence, when the case was called for trial, at which time the District Attorney of Dallam County stated in open court that the State would agree that the testimony of said witness be taken in open court, reduced to writing and introduced upon the trial of the case, but appellant declined to avail himself of the proffered agreement. The alleged absent witness could not have had any knowledge of any fact which occurred at the time of or immediately preceding the killing. Moreover, the record reflects that every material fact which he desired to prove by the absent witness was proved by other members of his family. Hence the bill fails to reflect error. This being a second or subsequent application, it was within the sound discretion of the court to overrule the same, and unless it is made to appear that the court abused his discretion with reference thereto, we would not be justified in reversing the case. See Gilbreath v. State, 136 Tex.Cr.R. 299, 124 S.W.2d 996; Humphreys v. State, 137 Tex.Cr.R. 142, 128 S.W.2d 816; Gunter v. State, 144 Tex.Cr.R. 43, 161 S.W.2d 100; Campbell v. State, 139 Tex.Cr.R. 379, 138 S.W. 2d 1091; Woodley v. State, Tex.Cr.App., 172 S.W.2d 318; Williams v. State, Tex. Cr.App., 168 S.W.2d 261.

By Bill of Exception No. 2 appellant complains because the trial court declined to sustain his motion to quash the special venire. In his motion he charged that the court ordered a special venire of 200 men to be drawn and summoned, from which a jury in this case was to be selected; that the sheriff's return upon said venire shows that 168 of said 200 veniremen were summoned by telephone or by mailing a card through the United States mail with the exception of 21 of this number, who were summoned in person; that upon the roll of said venire being called for the first time less than 70 veniremen qualified for service; that there were approximately 75 veniremen whose names were called who failed to appear and who were not excused or exempt from jury service. The court overruled the motion, and upon the call of the roll of said venire only 65 of those summoned reported for duty; that of the 65 who appeared only eight were selected on the trial of the case. Whereupon the defendant renewed his motion to quash the venire, but the same was again overruled; that in order to complete the jury the court, on three different occasions, by three separate orders, summoned 120 talesmen from which number the jury was completed. In his certificate to the bill, the trial court states that it was proven that 200 men had been ordered as a special venire in this cause; that all of said 200 veniremen were summoned by post card or telephone, either or both, with the exception of 21 who were summoned in person; that at least 95 per centum of the veniremen lived at Amarillo, the county seat of Potter County; that of the number of veniremen summoned only 65 appeared and out of which number only eight were selected as jurors to sit in the trial of the case; that thereafter, in order to complete the jury, the court, by three separate orders, summoned 120 talesmen from which the jury was completed.

Article 597, C.C.P., provides as follows: "The officer executing the writ shall summon the men whose names are upon the list attached to the writ to be before the court at the time named in the writ to serve as veniremen. Such summons shall be made verbally upon each juror in person."

Article 2116e, Vernon's Ann.Civ.St., Acts of the 45th Legislature, 1937, p. 678, chapter 339, section 1, provides:

"That in counties having therein a city of twenty-five thousand (25,000) or more population, as shown by the last preceding Federal Census, jurors summoned in capital cases shall be served verbally by the sheriff to appear, or if so ordered by the judge drawing said jury, shall be served by the sheriff by registered mail to appear.

"In the event the Judge drawing the jury directs the sheriff to make service by registered United States mail, it shall be sufficient if the summons to report for jury service states the time and place where said juror is to report, and if same be mailed in the United States mail by registered letter to the juror at the address shown by the card placed in the jury wheel, and if said letter be received by some person authorized by the United States mails to receive said letter. The return receipt of the United States Post Office Department showing said letter was received by said juror, or by some person authorized by the United States Post Office Department to receive same for him, shall be deemed prima facie evidence that the juror actually received such notice."

■ It appears from the bill that the foregoing provisions of the statutes were not observed and followed in securing the presence of the special veniremen drawn from the jury wheel. Under the facts disclosed by the bill, neither the defendant nor the State could have asked for an attachment to be issued for the absent veniremen inasmuch as they had not been legally summoned. Appellant was entitled to the selection of a jury from the veniremen drawn who were legally qualified for jury service unless the venire is exhausted; and this right should not be denied him by the officers whose legal duty it was to serve each of the prospective jurors verbally or by registered letter when so ordered by the court, as provided in Article 2116e, supra. We think that the bills of exception relating to the matter under consideration present reversible error. See Armstrong et al. v. State, 120 Tex.Cr.R. 532, 47 S.W. 2d 616.

By Bill of Exception No. 4 appellant complains of the court's action in overruling his objection to the following instruction in the court's main charge: "Our statutes provide that intoxication, produced by the voluntary recent use of ardent spirits, that is, intoxicating liquors, does not constitute any excuse in this State for the commission of crime, and that intoxication so produced shall not mitigate either the degree of the crime or the punishment therefor."

■■ The objection urged against the charge is that it is prejudicial, upon the weight of the evidence, and that the issue of temporary insanity produced by the voluntary recent use of ardent spirits was not raised by any evidence. The record does reflect that appellant was intoxicated at the time of the killing but not to a degree that it produced temporary insanity. Consequently, an instruction on temporary insanity from the use of ardent spirits was not required, but the instruction of the court that intoxication produced by the voluntary use of ardent spirits was not any excuse for the commission of the offense and should not mitigate the degree of the offense or the punishment was not improper. The voluntary recent use of intoxicating liquor will not authorize a mitigation of the punishment. It applies only when it has produced temporary insanity.

■ Bill of Exception No. 5 is without merit. When the order of the court changing the venue of the case was given to the clerk, it was tantamount to the filing thereof, although he may not have placed a file mark thereon.

■ Bill of Exception No. 6 complaining of the action of the court in declining to sustain appellant's challenge to prospective jurors because they had not paid a poll tax is without merit. Art. 579, C.C.P., provides that the failure to pay the poll tax shall not disqualify any person from jury service. See Franks v. State, 139 Tex.Cr.R. 42, 47, 138 S.W.2d 109.

■ Bill of Exception No. 7 complains of certain testimony given by Mrs. Allison to the effect that appellant told her that on one occasion when he whipped the deceased with a wet rope his mother and sister came out and took it up and he whipped the boy's mother. We fail to see

the relevancy of this testimony. It did not prove or tend to prove any fact to support any issue. That it was prejudicial is obvious, and upon another trial all testimony relating to appellant's harsh treatment of his wife should, upon objection, be excluded.

In Bill of Exception No. 8 appellant complains of the cross-examination of his wife by the District Attorney relative to a certain conversation which she had with Mrs. Allison in front of Mr. Schlofman's office on the first day of September, 1942, and if she did not in that conversation state to Mrs. Allison: "Well, it is going to be hard to say anything against Clark, but we just have to get dad out of this." To which appellant objected on the ground that the alleged conversation was out of the presence and hearing of the defendant, was not res gestae and not germane or pertinent to the direct examination of the wife. Appellant requested the court to instruct the jury not to consider the same. The court overruled the objection and the witness answered the question in the negative. Mrs. Allison was then called and testified that such statement was made by the witness. In our opinion, this bill is without merit. The wife of appellant gave testimony favorable to the appellant. The statement did not relate to any conversation between the witness and her husband. It affected the credibility of her entire testimony and the weight to be given to it. The State had a right, if it could, to discredit the witness. Consequently, there was no error on the part of the court in overruling the objection. In 44 Tex.Jur., p. 1039, sec. 77, it is said: "Notwithstanding that no new matter may be introduced on cross-examination of a wife who has testified for her husband * * * she may be interrogated as to matters which fairly and legitimately tend to test the credibility and truthfulness of her testimony on direct examination."

Bill of Exception No. 9 complains of certain testimony given by the wife of the deceased over appellant's objection relative to her undisclosed motive in trying to get the deceased away from appellant's home, what she said to him and what he said to her out of the presence and hearing of the appellant. This testimony should not have been admitted as against the objections urged thereto. We see no need of entering upon an extended discussion of the reason why and wherefore it

was not admissible. The objections state an elementary rule of evidence of long standing.

For the errors pointed out the judgment of the trial court is reversed and the cause remanded.

## PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## On State's Motion for Rehearing.

BEAUCHAMP, Judge.

The State has filed a motion for rehearing in this case, contending that the case should not be reversed and that no errors are shown by bills of exception 2, 7, and 9. Only the argument relative to bill of exception No. 2 impresses us as having any serious ground for the contention made. This argument is concluded by the statement that: "When verbal service was given by telephone there was a compliance with the statute." The original opinion quotes the language of the statute relied upon. It is conceded by the State that Article 597 of the Code of Criminal Procedure provides that service on jurors must be made in person and that this "certainly means that by a parol or oral act the sheriff must approach the veniremen personally in order to comply with the law." This concession is warranted and will be the basis of our consideration of a subsequent act of the Forty-Fifth Legislature, page 678, chapter 339, providing for an additional method of service for capital cases. This Act, brought forward as Article 2116e, Vernon's Annotated Statutes, is an amendment to Article 597 and is effective only to the extent that it specifically provides a change in the method of summoning veniremen.

It will be noted that in the first section of the amended act the service is to be made "verbally" or by registered mail. Neither the words "personally" or "in person" appear, and the absence of them is the basis for the contention by the State that the law is complied with when the summons is by word of mouth, whether in person or by telephone conversation. The argument in behalf of this contention is not without force. However, we have, from the same source, come to the opposite conclusion. If the first section of the Act

stood alone, divorced from the history behind it and from the caption and emergency clause in the Act, doubt as to the intention of the Legislature would appear.

The caption to a bill measures the possible content of the bill, though it must be conceded that unless that part of the bill following the enacting clause contains all of the things set out in the caption, the wording will not be expanded by the language of the caption. The caption contains the expression "either in person, verbally, or by registered United States mail * * *." This definitely makes it possible for the Act to carry that construction, if in fact it does do so.

The State resorts to the emergency clause of the bill as an argument that Article 597, C.C.P., was so amended as to permit service by telephone. Again it may be observed that while the emergency clause frequently is resorted to for interpretative expressions, this may be done only in cases where interpretation of the language of the main body of the bill is necessary. If the language and purpose of the Act are clear and definite, this will prevail over and above clearly contrary expressions in the emergency clause. Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481; Keator v. Whittaker, 104 Tex. 628, 143 S.W. 607; Graves v. State, 6 Tex.App. 228; Lanham v. State, 7 Tex.App. 126; Ex parte Murphy, 27 Tex.App. 492, 11 S.W. 487. The chief office of an emergency clause is to express a reason for suspension of the rules requiring reading on three separate days and to put the bill into immediate effect. Missouri-Kansas-Texas Ry. Co. v. Thomason, Tex.Civ.App., 280 S.W. 325.

We quote from the emergency clause, as follows: "The fact that large sums of money are being daily spent in various counties in Texas in capital cases in endeavoring to have personal service on jurors, and the fact that frequently it is impossible to actually find the juror and make personal service upon him in time for the term of court to which he is to report, create an emergency * * *." We interpret this to mean that there is an imperative public necessity that an additional method of summoning jurors in capital cases should become effective immediately, and it was in the bill set out that it may be done by registered United States mail. It is inconceivable that they had in mind a person could be found by telephone and yet could not be found by personal service. The only remedy provided, in addition to that for other cases, is the registered mail. If the Legislature had meant to add the privilege of a telephone call, it would have been easy to have said so. To construe this as an implication would be inconsistent with the carefully guarded method by registered United States mail, which could only be resorted to with permission of the trial judge and under his direction. It is noted, too, that a return registry receipt is required. If the sheriff is to have the privilege of calling by telephone, at his discretion, then he certainly should have the privilege of doing so by mail, at his discretion. Unregistered mail would be as reliable as a telephone call to a large number of veniremen, whose voices no sheriff would be expected to identify. We cannot concede that Article 597, C.C.P., has thus been modified by implication so inconsistent with the guarded methods carefully provided in the bill.

The State's motion for rehearing is overruled.