## ERNEST GARCIA V. STATE

No. 27,233. February 2, 1955
Rehearing Denied March 23, 1955

*Roy A. Scott,* Corpus Christi, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for murder; the punishment, 15 years in the penitentiary.

According to the state's evidence, appellant and the deceased,

Ysidro Martinez, had an argument, following which appellant went to his home, secured his 12-gauge Remington Pump Shot Gun and fired at the deceased as he ran toward the home of Joe Martinez, his brother. He then approached this house, pushed the barrel of the shot gun through a window screen and again fired at deceased as he stood in the kitchen of his brother's home. The last shot struck deceased in the stomach and caused his death.

There was evidence to the effect that the deceased was intoxicated and that prior to the shooting he had armed himself with a butcher knife and cursed and threatened appellant.

Teresa Soliz, one of the witnesses placed on the stand by appellant, testified that appellant secured a weed cutter, when he saw the deceased with a knife, and started calling the deceased names; said he was not going to kill him with the weed cutter but was going to go get the gun and kill him. Thereupon the deceased went in the house and closed the door. He did not carry the knife into the house, but threw it away. This witness further testified that appellant, "she guessed," went back to his house, and the deceased went to his mother's house and as he was coming back, appellant was coming from his house with the shot gun, was swearing and pointing the gun at the deceased, and she put her head down because she was afraid of the shot; that she heard a shot and saw the deceased with blood on his hand, and heard a second shot from the direction of the Joe Martinez house; that she did not see appellant at the time this shot was fired, but saw him go over to Willie Dominguez' window, call him and say: "I am proud I killed the son-of-a-bitch."

It was the testimony of this witness that the shots were fired some time after the deceased threw away the butcher knife, and that she saw nothing in his hand after it was thrown away.

It was appellant's testimony that he had been informed by his wife that the deceased had come to their home in his absence and asked her to sleep with him; had peeped through the window while she was changing her clothes; and on one occasion, had opened the door of the outhouse while she was in it and had frightened her. Appellant testified that he had repeatedly warned the deceased not to come about his premises; that the deceased had resented his warnings on occasions when he had been drinking, and that he was drunk on the occasion of the

killing. His version of the killing was that the deceased was outside of Willie Dominguez' house while he was there visiting Willie, who was sick; that the deceased had a butcher knife in his hand and started cursing and threatening to kill him, applying to him vile names, and calling to him to come outside "so that he could kill me"; that as he went outside the deceased came toward appellant with the knife; that he located a weed cutter and the deceased went into his brother's house; that he asked Joe to advise his brother to quit and go home; that deceased came out of the house again threatening to kill appellant and again applied to him the vile name; that Joe pushed the deceased back as far as the fence while he, appellant, stood there with the weed cutter; that deceased's brother Joe left, saying he was "going to get the law"; that the deceased "said he was going home and get his gun and come back and kill me"; that when he next saw the deceased "he was running toward me—had a knife in his hand—then I fired a shell to try to avoid him, see if he would change his opinion about going back"; that he, appellant, fired two shots.

As to the firing of the second shot, he testified that the deceased ran inside Joe's house; continued through the back window cursing appellant — was cursing — using foul language, "still threatening to kill me." "When I turned around, he had his hand over his hip like he was going to get a gun and that's when I fired the second shot."

The jury did not see fit to accept appellant's version and found against his plea of self-defense.

There are three formal bills of exception, in considering which other evidence will be mentioned.

The homicide occurred in Aransas County and, the indictment being returned, a trial was had in that county which resulted in a hung jury. The venue was then changed to Refugio County where the present trial was held.

Appellant first complains of the overruling of his motion for continuance based upon the absence of the witness Fannie Curtiss and of the overruling of his motion for new trial based upon the failure of the court to grant a continuance.

It was shown that the witness was under process, had been in attendance at the former trial, but because of an accident

which occurred two days before, was in the hospital and was physically unable to attend the present trial.

The testimony which the affidavit of the witness attached to the motion for new trial shows she would have given was: "I was in Rockport, Texas, and was near the home of Ernest Garcia; that five or six minutes before I heard two gun-shots, I saw Ernest Garcia running in the direction of his home which was only a few feet away, and I saw Ysidro Martinez directly behind him running after Ernest Garcia; that Ernest Garcia had no weapon or anything in his hands; that Ysidro Martinez had a large knife in his hands; the knife had a blade five or six inches long and it looked like a regular butcher knife. Martinez was cursing Garcia at the time and was threatening to kill him. I did not see any other persons standing around who witnessed what I saw. A few minutes after I saw Ysidro Martinez chasing Ernest Garcia with the large knife, I heard gunshots. I did not see the actual shooting, and have related above what I saw shortly before I heard the sound of a gun being fired."

The motion for continuance was a subsequent motion. In fact the record shows that six motions for continuance had previously been requested, three of which were granted after the venue had been changed to Refugio County. None of the prior motions were based upon the absence of a witness.

The record also shows that the absent witness, though present and available, was not called to testify at the former trial.

In view of these facts, the close similarity of the desired testimony and that of the defense witness Teresa Soliz, and the fact that appellant's claim of self-defense was based upon appearance of danger from a pistol which he claimed to believe was being drawn, and not the knife which defendant's witness Teresa Soliz testified had been discarded some time before, we have reached the conclusion that the trial court did not abuse his discretion in overruling the motion for continuance and the motion for new trial.

The remaining complaint is addressed to the closing argument of the district attorney.

As stated, appellant testified that his wife had informed him that the deceased had made improper advances and sought to have improper relations with her. His wife was called as a

witness and testified as to such improper conduct having occurred and corroborated appellant's testimony that she had informed him of such misconduct.

After discussing this testimony the district attorney stated to the jury, in his closing argument: " . . . that two distinct crimes were committed. That one was the murder with malice, which the defendant committed and the other was the colossal, brazen perjury, which the defendant and his wife committed in testifying to the improper advances made by the deceased to defendant's wife prior to the date of the offense alleged in the indictment."

He also remarked: "In the face of this evidence of a man armed with that shotgun, making his threat to kill, going home and getting his gun, coming back, lying in ambush for his intended victim, shooting an unarmed man down by the fence and following him around after he had sought refuge in his brother's house, poking a gun through the screen and shooting him there like a dog on the floor. In the face of that kind of testimony they hatch up this story about Ysidro molesting . . . ."

The record shows that at the former trial appellant and his wife testified, but neither testified to any improper proposals or conduct of the deceased toward appellant's wife.

These facts were in evidence before the jury, and the district attorney was not, therefore, without basis for his deduction.

We find no reversible error in the record and the evidence is sufficient to sustain the conviction.

The judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

Appellant presses upon us his contention that he was entitled to a continuance in order that he might have the benefit of the testimony of the witness Fannie Curtiss and that we erred in upholding the trial court's action in overruling the application for a continuance and the motion for new trial based thereon.

Whether the application for continuance was the third, as

contended by appellant, or the sixth, as suggested in our opinion, is not material.

All subsequent motions for continuance—that is, motions after the first—fall within the same category regardless of their number and must be made to secure testimony that cannot be procured from any other source known to the accused. Art. 544, C.C.P.

In addition to the statutory requirement mentioned, the absent testimony must not be cumulative of other testimony in the case. Moore v. State, 131 Texas Cr. R. 420, 99 S.W. 2d 916; Woodley v. State, 146 Texas Cr. R. 260, 172 S.W. 2d 318.

It is also true that the overruling of a subsequent motion for continuance warrants a reversal of the conviction only when it is made to appear that the trial court abused his discretion in the matter in failing to award a new trial after conviction. Johnson v. State, 155 Texas Cr. R. 444, 236 S.W. 2d 147; Kincheloe v. State, 146 Texas Cr. R. 414, 175 S.W. 2d 593; Campbell v. State, 139 Texas Cr. R. 379, 138 S.W. 2d 1091.

An important factor to be taken into consideration in determining if an abuse of discretion has occurred is whether a different result or one more favorable to the accused would likely or probably have been reached had the absent testimony been before the jury. Tuck v. State, 155 Texas Cr. R. 113, 231 S.W. 2d 436.

With these rules in mind, we analyze appellant's situation:

There is no question but that appellant exercised due diligence to secure the attendance of the witness, because the latter was under process, having been duly subpoenaed as a witness.

The absence of the witness was occasioned by the injuries she received in an automobile accident two days before the case was called for trial, by reason of which she was, at the time of the trial, confined in a hospital and was physically unable to attend court.

The absence of the witness was not chargeable against the appellant because of any negligence on his part.

The affidavit of the absent witness attesting the facts to which she would have testified was attached to the motion for

new trial and was before the court when he passed upon that motion.

The materiality of the absent testimony can hardly be challenged. The absent witness, however, did not see the actual shooting and knew nothing of the facts occurring at that time.

The question, then, for our determination narrows itself to two propositions: (1) Was the absent testimony cumulative? (2) Was the absent testimony calculated to cause the jury to render a verdict more favorable to the appellant, if it had been before them, than that which was rendered?

The practical effect of the testimony of the absent witness was that shortly before the killing she saw the deceased chasing or running after the appellant with a butcher knife and cursing and threatening to kill him and that appellant had no weapon in his hands at the time.

The testimony of the appellant's witness Teresa Soliz was, as stated in our original opinion, to the same general effect as that of the absent testimony. In fact, the testimony of that witness tended more to corroborate the testimony of the appellant upon the same subject than did that of the absent witness.

The issue as to whether the absent testimony was cumulative of other testimony in the case is directly presented. But our determination of the question is by no means required to rest entirely upon whether the absent testimony was cumulative. The question of probable effect must be considered.

Testifying as a witness in his own behalf as to the incident relative to deceased's chasing and cursing him with a knife, appellant testified as follows:

"Yes, sir, he was coming towards me with a butcher knife. I run around the lawn until I finally located a weed cutter, and when I located the weed cutter I picked it up and he started back towards Joe's house. When he got inside Joe's house I told Joe to advise his brother to quit that—to go on home. Ysidro steps out of the door and he tells Joe, 'I am going to kill the . . . .' Joe got in between us and Joe pushed him back and I stood there with the weed cutter. Joe pushed him back as far as the fence."

The incident above described occurred prior to the killing.

The testimony of the absent witness was contradictory of appellant's own admission, for the absent witness would have testified that appellant "had no weapon or anything in his hands." Also, it is contradictory because, according to appellant's testimony, when he got the "weed cutter," deceased stopped advancing on appellant and "started back towards Joe's house." The absent witness on that point would have testified that the deceased was "running after" appellant.

Because of such contradictions, we are unwilling to say that the jury would likely have accepted the testimony of the absent witness, had it been before them, and rendered a verdict more favorable to the appellant.

We cannot therefore say that the trial court abused his discretion when he refused to grant a new trial because of the absence of the testimony of the witness Fannie Curtiss.

We remain convinced that a correct conclusion was reached originally.

Appellant's motion for rehearing is overruled.