**Johnie Leroy PENRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43299.**

Court of Criminal Appeals of Texas.

Dec. 31, 1970.

John O. Young, Orange, for appellant.

Bill A. Martin, Dist. Atty., Newton, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder under Article 802c, Vernon's Ann.

P.C. The punishment was assessed by the jury at five years.

The indictment, returned June 8, 1967, alleged that on or about the 9th day of April, 1967, appellant did unlawfully, while intoxicated and under the influence of intoxicating liquor, drive and operate an automobile upon a public highway and did, in the execution of said unlawful act, through accident and mistake, kill Essie Lowe Berry by driving said automobile into and causing it to collide with the automobile occupied by the said Essie Lowe Berry.

The case was continued for the term upon motion of appellant's attorney, C. Haden Cribbs, Jr., filed June 19, 1967, alleging "that adequate time is needed to properly prepare his argument, various defense and motions, and that defendant's attorney was only advised of the trial setting Sunday, June 18, 1967."

The case came on for trial on March 25, 1968, and a jury having been selected and impaneled and the indictment read, appellant entered his plea of not guilty.

■ Appellant's first ground of error complains of the overruling of his motion for continuance orally made at this stage of the trial by his counsel, Honorable John O. Young. Appellant testified in support of this, his second motion for continuance, that both Mr. Cribbs and Mr. Young had been hired to defend him; that he did not know why Mr. Cribbs was not in court: "He's supposed to be here is all I can tell you. My father talked to him Saturday morning over the phone and he told my father he'd be here."

Appellant further testified that Mr. Cribbs "has some very important photographs of the accident itself." On cross-examination he testified that he had not known either Mr. Cribbs or Mr. Young personally and that he was satisfied with Mr. Young's qualifications as his attorney.

No motion for new trial was filed. There is nothing in the record to support the allegation made in appellant's brief that Mr. Cribbs "fell violently ill", or to show that a different result or one more favorable to appellant would likely or probably have been reached had Mr. Cribbs been present with the photographs and other items in his file.

The trial court did not abuse his discretion in overruling the oral second motion for continuance made after the jury was empaneled and sworn and appellant had entered his plea. See Campbell v. State, 139 Tex.Cr.R. 379, 138 S.W.2d 1091; Garcia v. State, 161 Tex.Cr.R. 249, 276 S.W.2d 527; Tiner v. State, 92 Tex.Cr.R. 306, 243 S.W. 1092.

Ground of error number two relates to the sufficiency of the evidence. The sufficiency of the evidence to show that appellant was intoxicated at the time of the collision is not questioned. The State offered testimony of witnesses that he was, in their opinion, intoxicated; and testimony that a blood sample taken from appellant shortly after the collision contained .24 percent alcohol by weight (more than .10 percent indicating intoxication).

The undisputed evidence reflects that a Plymouth automobile traveling north on a highway in Jasper County, on April 9, 1967, was involved in a head-on collision with a panel truck traveling in the opposite direction. The time of the collision was fixed at between 5:40 and 5:45 P.M.

A passenger in the panel truck was killed as a result of the collision.

Appellant contends that (1) the State failed to prove defendant was the driver of the motor vehicle or that his act of driving, if he drove, was the cause of the collision; and (2) there was a fatal variance in identity of the deceased as named in the indictment and the proof offered in support of same.

■ James Ronnie Johnson testified that he observed appellant driving the Plymouth at about 5:40 P.M. on the date of the accident, and a few minutes later he heard

about the accident. He went to the scene of the accident and saw the same car that had passed him a few minutes before. Johnson also saw that his brother Robert was a passenger in the car with Penry.

Mrs. Nancy Johnson, wife of Robert Johnson, testified that Penry had been drinking earlier while he took her to her mother's house. They arrived at her mother's house about 5 o'clock. Penry was driving the Plymouth, and her husband left with him, riding on the passenger side. She also testified that Robert Johnson had not driven a car all day because he had been drinking and he did not drive when he was drinking.

Mrs. Eunice Lumpkin testified that she observed the appellant from her front porch on the day in question. She observed the appellant get into the car behind the steering wheel, in the driver's seat, and drive away. Robert Johnson was also in the car. Johnson leaned his head back on the seat, with his arm hanging out the window. Mrs. Lumpkin lived directly across the street from appellant.

Robert E. Jenkins, a coach at Kirbyville High School, testified that he was one of the first persons to arrive on the scene of the accident. Mr. Jenkins observed appellant behind the steering wheel of the automobile and helped him get out of the car by prying the door open with a crowbar. Jenkins also saw Robert Johnson lying forward with his head on the dash board.

The testimony of these witnesses is clearly sufficient to sustain the jury's finding that appellant was the driver of the car which collided with the panel truck. There is also sufficient evidence to show a causal connection between the intoxication of appellant and the collision and resulting death.

Tommy Everage testified that at about 5:30 or 5:45 P.M. he personally witnessed the accident. His testimony was that appellant's car passed the car in which he was riding at a fast speed, and then swerved back in its lane, then it swerved back to the other side into the other lane. The van was coming headon in that lane, and appellant attempted to swerve out of the way, but he did not have time.

Testimony that the panel truck occupied by deceased was in its lane of traffic, and that the Plymouth driven by appellant was also in the panel truck's lane of traffic, also came from Robert E. Hutchins, a Highway Patrolman; Joe Folk, the principal of Kirbyville High School who observed the vehicles immediately after the impact; and Highway Patrolman K. P. Creech.

■ The name of the passenger in the panel truck that was killed, according to the indictment, was Essie Lowe Berry. Appellant's claim of variance is predicated upon the death certificate introduced in evidence which shows the middle name "Opal" and not "Lowe."

Dr. John T. Moore, a practicing physician, testified that he received some patients that had been involved in a car accident, one being a patient by the name of Essie Opal Berry, or Essie Lowe Berry, wife of Willard Berry.

He identified the copy of the death certificate introduced in evidence as State's Exhibit No. 1, and testified:

"Q. Would you please tell us the name of the deceased as shown on that?

"A. Essie Opal Berry.

"Q. Would you tell us the name of the father of Mrs. Berry?

"A. Jim Lowe.

"Q. And the mother was Mrs. Williams, is that correct?

"A. Dora Williams.

"Q. I ask you whether or not it's customary in issuing one of these certificates, you put the first, middle and last name of the party?

"A. That's required on the death certificate.

"Q. Is it also customary that in naming a party that you use the first name and the married name and the—the first name, the father's last name, and the married name of the lady in signing your signature or filling out instruments and papers?

"A. That's right.

"Q. Is this Mrs. Essie Opal Berry and Mrs. Essie Lowe Berry one and the same persons?

"A. Yes, sir.

"Q. All right, thank you, Doctor. Dr. Moore, would you tell us what you found upon examination of this Mrs. Berry?

"A. When Mrs. Berry came in, which was about five minutes after six on the 9th of April, 1967, she was unconscious and in deep coma. She had obvious head injuries, but the most striking thing about her, both legs were torn off between the ankle and the knee.

"Q. I see.

"A. Each of the two bones in both legs were exposed and were of different lengths. They were not cut off square, but were sorta torn and mashed off.

"Q. They were completely severed?

"A. In addition to that she had multiple lacerations all over her body. All of them, some deep, some minor, just too numerous to describe.

"Q. Dr. Moore, could you tell us from a reasonable probability and from your examination, what the cause of death was to Mrs. Essie Berry?

"A. Head injury along with massive loss of blood through the amputated legs."

Appellant's remaining ground of error relates to the following testimony of Doctor Moore, admitted over the objection shown:

"Q. Of course, I'm sure you know from other people's statements what did take place, but from your own examination?

"A. Oh, yes. She had numerous blows. She was not dead when she arrived. She died about fifteen minutes later.

"Q. You administered to her during her fleeting life there?

"A. Yes, sir.

"Q. Were you at the same time very busy around the clinic with other persons who had also been brought in or reported in to the clinic?

"A. Yes, sir, there were twelve people, I believe—no, thirteen.

"Q. Involved in the same situation?

"A. Yes, sir.

"Q. Do your records and your knowledge—by your own knowledge, do you know what caused all of these people to be in your clinic?

"MR. YOUNG: Of course, Your Honor, any other person other than the one alleged in the indictment would be inflammatory, prejudicial to the rights of this defendant.

"THE COURT: Objection will be overruled.

"MR. YOUNG: Exception."

We find no error in the court's ruling on the objection shown. See Taylor v. State, Tex.Cr.App., 420 S.W.2d 601.

The judgment is affirmed.