Glen Paul GRISSOM, Appellant,

v.

The STATE of Texas, State.

No. 2–81–018–CR.

Court of Appeals of Texas,
Fort Worth.

Dec. 2, 1981.

Discretionary Review Refused
Feb. 24, 1982.

John R. Jensen, Arlington, for appellant.

Tim Curry, Dist. Atty., and James J. Heinemann, Asst. Dist. Atty., Fort Worth, for appellee.

Before HUGHES, JORDAN and BROWN, JJ.

## OPINION

JORDAN, Justice.

Appellant was convicted by a jury of the offense of aggravated robbery and his punishment, enhanced by a prior felony conviction, was assessed by the jury at forty years in the Texas Department of Corrections.

We affirm the judgment of the trial court.

On the evening of February 13, 1978, Mr. and Mrs. Charles Chamberlain parked their car on the parking lot of Six Flags Mall in Arlington, Texas. They had planned to eat dinner and then do some shopping. Mr. Chamberlain was driving the car and his wife was in the front seat next to him. As Chamberlain started to alight from the car, he was accosted by a man, later that night identified as appellant, who, brandishing a knife in one hand, demanded that Chamberlain give him his money. Chamberlain could not say how large this knife was, but it was later identified as an ordinary "Old Timer" pocket knife, with a blade approximately one and one half to two inches long. Appellant held the knife "out-stretched", about eighteen inches to two feet away from Chamberlain, and he told Chamberlain several times to give him the money or he would "cut your throat." On one occasion, after Chamberlain had shown some resistance, appellant told Chamberlain "I'm not kidding, I want your money or I'll cut your throat." Appellant took thirteen dollars from Chamberlain, then told Mrs. Chamberlain "I'll cut his throat if you don't give me your money." Mrs. Chamberlain gave him ten dollars.

Chamberlain testified that he was forced to surrender his money because of the threats made to him and because he was in fear of imminent bodily injury or death if he failed to comply.

On the same evening, and within one and one half to two hours after the Chamberlains were robbed, appellant was arrested by Arlington police and identified by Mr. and Mrs. Chamberlain as the man who robbed them.

■ By his first ground of error, appellant contends that the trial court erred in not granting his motion for directed verdict because the evidence was not sufficient to support a conviction of aggravated robbery. He says the evidence was insufficient to show that in committing this robbery, appellant used a deadly weapon. Appellant contends that there is no evidence in the record that appellant actually intended to kill or cause serious bodily injury and that there was no evidence that appellant actually made any gestures with the knife or moved it toward Chamberlain. He also says that considering the position of appellant and Chamberlain at the car on the evening of this occurrence, it would have been extremely difficult for appellant to inflict sufficient injuries to cause death.

Under V.T.C.A. Penal Code, § 29.03(a)(2), a person commits the offense of aggravated robbery if he uses or exhibits a deadly weapon. In V.T.C.A. Penal Code, § 1.07(a)(11)(B), a deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The evidence clearly shows, as indicated above, that appellant robbed Mr. and Mrs. Chamberlain, using a small knife, which he exhibited; that he threatened several times during a few minutes to "cut your throat", and that Mr. Chamberlain was in imminent fear of serious bodily injury or death. The Chief Medical Examiner of Tarrant County, the late Dr. Felix Gwozdz, testified that this knife, though small, is capable of causing death or serious bodily injury to a person. More specifically, Dr. Gwozdz testified that if the knife were used, as threatened by appellant, to cut the throat, the carotid arteries and the jugular vein could be cut and the person could die as a result of massive hemorrhaging.

We hold that under this evidence there was more than sufficient evidence for the jury to find, as it did, that appellant fully intended to cause death or serious bodily injury to Mr. Chamberlain with the knife which he exhibited on this occasion. Wounds need not be inflicted before a knife can be determined to be a deadly weapon. *Denham v. State*, 574 S.W.2d 129 (Tex. Crim.App.1978). Words spoken by the accused may be considered by the jury in deciding if the weapon used is a deadly weapon. *Williams v. State*, 575 S.W.2d 30 (Tex.Crim.App.1979). In this case, the appellant, using a knife, even though small, said, in effect, "I'll cut your throat if you don't give me your money." Appellant's first ground of error is overruled.

Appellant next contends the trial court erred in using the disjunctive "or" in the charge to the jury when the indictment had used the conjunctive "and". In the indictment in this case it is alleged that appellant did "intentionally *and* knowingly threaten and place Charles Wilson Chamberlain in fear of bodily injury and death", while the charge reads "intentionally *or* knowingly threatens *or* places another in fear of imminent bodily injury *or* death." (Emphasis supplied.) Appellant says that this lessened the State's burden of proof in this case. We do not agree. The charge tracks V.T.C.A. § 29.02(a)(2), the statute on robbery, which reads, in part: "(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he: . . . (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." The language in the court's charge was proper and did not place a lesser burden of proof on the State. See *Hunter v. State*, 576 S.W.2d 395 (Tex.Crim. App.1979). This ground of error is overruled.

By his third ground of error appellant complains that the trial court denied him the right to a full voir dire examination of the jury panel. The record shows that on the morning the trial started, the state examined the jury panel from 10:00 A.M. till 10:55 A.M., and that appellant's counsel then examined the jury panel from 11:20 A.M. until 12:34 P.M., when the examination was terminated by the court and a lunch recess declared. The court had advised counsel for appellant at the beginning of his voir dire that he would have until 12:30 P.M. for his voir dire. No harm or error is shown in the limitation placed on appellant's voir dire by the court. From the record it is evident that counsel for appellant spent a considerable amount of time on generalities before he began his individual examination of members of the panel. While he was not able to examine all of the panel members before the court terminated the voir dire, it is our opinion that counsel had ample time to examine all of them if he had budgeted his time a little more carefully. Appellant has not shown how he was harmed. The peremptory challenges are not included in the record, and it is not shown that he was forced to take any objectionable juror.

Appellant relies on *De La Rosa v. State*, 414 S.W.2d 668 (Tex.Crim.App.1967) to support his position. However, the trial court's limitation of voir dire in this case is far different from the arbitrary limitation to one half hour by appellant in *De La Rosa*. *De La Rosa* does not support appellant in this case. The conduct of voir dire examination rests largely within the sound discretion of the trial court. *Weaver v. State*, 476 S.W.2d 326 (Tex.Crim.App.1972). It is not only the right but the duty of the trial court to confine the examination of prospective jurors within reasonable limits. If this was not so, some trials would never terminate. *Grizzell v. State*, 164 Tex.Cr.R. 362, 298 S.W.2d 816 (1976). See also *Barrett v. State*, 516 S.W.2d 181 (Tex.Crim. App.1974). This ground of error is overruled.

Appellant also complains, by his fourth ground of error, of the trial court's refusal of his requested charges on the use of a knife as a deadly weapon. Appellant had requested that the jury be instructed that the knife in and of itself is not a

deadly weapon and also requested other instructions regarding the size, weight, length and width of the blade of the knife in question. All of these requested charges dealt only with evidentiary matters and it was not error to refuse them. The trial court in its charge fully defined the term "deadly weapon" in accordance with V.T.C.A. Penal Code, § 1.07(a)(11), and also required that the jury find that the "deadly weapon" to wit, a knife was used or exhibited before the defendant be found guilty. This ground of error is also overruled.

All grounds of error are overruled and the judgment of the trial court is affirmed.