Gregorio LOPEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00278–CR.

Court of Appeals of Texas, San Antonio.

March 30, 1983.

831

Richard Langlois, San Antonio, for appellant.

Bill White, Dist. Atty., E. F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, for appellee.

Before CADENA, CANTU and TIJERINA, JJ.

## OPINION

CANTU, Justice.

Appellant was convicted for the attempted murders of Hipolito Canales, (79–CR–0282), and Belinda Guerra (79–CR–0283), and for an aggravated assault on Leo Rodriguez (79–CR–0284). All three indictments alleged two prior felony convictions for enhancement under Tex.Penal Code Ann. § 12.42(d) (Vernon 1974). The enhancement counts were waived in 79–CR–0283. The jury sentenced appellant to 99 years in Cause No. 79–CR–0282, 20 years in Cause No. 79–CR–0283; and the jury finding the appellant to have been finally convicted in two prior felonies in Cause No. 79–CR–0284, the court then assessed punishment at confinement in the Texas Department of Corrections for life.

The incidents giving rise to these convictions, referred to in the local media as the "courthouse stabbing spree," [1] occurred in the Bexar County Courthouse in downtown San Antonio, Texas. Hipolito Canales, an assistant Bexar County District Attorney, Belinda Guerra, a probationer and acquaintance of appellant, Leo Rodriguez, a court bailiff, and several others were waiting for Judge Al J. Klein to call the probation docket in the 224th District Court on the morning of January 26, 1979. Appellant entered the courtroom accompanied by Belinda Guerra, with whom, the testimony shows, he had just exchanged hostile words in the elevator. The two sat down on a bench in the rear of the courtroom. Judge Klein testified that he then saw appellant rise and deliver a blow to Guerra's solar plexus. As Guerra doubled over bleeding, the appellant ran from the courtroom and the judge ordered his bailiff, Rodriguez, to follow him.

Rodriguez testified that he chased appellant down the crowded hallway where ap-

1. San Antonio News, April 12, 1979. (Defense exhibit 24).

pellant attempted to back into a crowded elevator while fending him off. When Rodriguez tried to grab the crouching appellant, appellant struck at him with a knife and cut him on the wrist and elbow.

Assistant District Attorney Canales, testified that he was sitting at counsel table preparing written stipulations when he glanced up and saw appellant strike Guerra and run out of the room. Canales followed appellant and Rodriguez out of the courtroom to the elevator. Thinking Rodriguez was just behind him, Canales approached appellant who was crouching in the elevator. Canales tried to grab appellant's lapel and then, in his own words; "I didn't see a knife, but I felt a blow to my chest here. And, I looked down and saw blood coming from my shirt. And I stepped back and he ran away."

Appellant ran down the stairs located near the elevators and made good his escape. Appellant was apprehended in the morning hours of the next day after taking several hostages captive at a local pawn shop.

Appellant urges sixteen (16) grounds of error in his appeal. In grounds of error 2, 3, 4, 5, 6, 9, 13A and 13B, appellant raises various contentions concerning the nature of the weapon used and alleged errors committed by the trial court in regards thereto. We, therefore, reiterate the pertinent evidence.

Although no one saw the knife when appellant struck Guerra, her treating doctor testified that she suffered a puncture wound to her abdomen and that she spent a week in the hospital recuperating from the wound. The doctor also testified that such a wound as Guerra suffered would be made by a blade or a sharp knife. A circumstantial evidence charge was given in the Guerra stabbing.

Rodriguez testified that he saw the knife he was cut with. He said the knife was 5 or 6 inches long. The knife penetrated Rodriguez's arm from front to back. Rodriguez's treating doctor stated the wound was 1 inch wide at the point of entry and 2 inches deep. The treating doctor also testi-

fied that the instrument used would cause impairment of the use of Rodriguez's arm. A bystander testified the appellant had a knife 4 to 6 inches long.

Canales did not see the knife, but saw blood spurting from his chest. Canales' treating doctor testified that the knife penetrated the pleura, pericardium, and the heart. The State introduced a photograph taken during the emergency surgery performed on Canales wherein the doctor displays Canales' heart, pointing out the puncture wound on the left ventricle.

The same doctor testified that the weapon used to stab Canales was capable of causing death or serious bodily injury.

In ground of error six, appellant challenges the sufficiency of the evidence to show the weapon used to stab Rodriguez was a deadly weapon. Viewing the evidence, and the inferences arising therefrom in the light most favorable to the verdict, we reject his challenge. The jury heard Rodriguez testify that the knife was 5 or 6 inches long at the time he was stabbed. Canales' doctor testified that the instrument injuring Canales was capable of causing death or serious bodily injury. All three stabbings occurred within seconds of each other. None of the witnesses testified that they saw appellant discard the knife he stabbed Guerra with. No knife was ever recovered and consequently no knife was introduced into evidence.

The jury was justified, from the evidence and testimony adduced, to conclude that the same knife was used in all three stabbings. There is therefore, sufficient evidence to show the weapon used in all three stabbings deadly. Cf. *Hawkins v. State,* 605 S.W.2d 586 (Tex.Cr.App.1980). Ground of error six is overruled.

In grounds of error two and three, appellant contends that the trial court committed reversible error by failing to give a circumstantial evidence charge in the Rodriguez and Canales cases because there is no direct evidence as to the nature of the weapon involved.

■ The trial court is required to charge on the law of circumstantial evidence only when the State's case depends entirely upon circumstances for conviction. *LeDuc v. State,* 593 S.W.2d 678 (Tex.Cr.App.1979); *Luck v. State,* 588 S.W.2d 371 (Tex.Cr.App. 1979), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980).

■ However, when the facts are in such close relationship to the main fact to be proved as to be equivalent of direct testimony, a charge on circumstantial evidence is not required. *Rodriguez v. State,* 617 S.W.2d 693 (Tex.Cr.App.1981).

■ Both the Rodriguez and Canales cases did not depend *entirely* upon circumstantial evidence. The fact that Canales, as the victim, did not see the knife used would not alone render all other proof on the nature of the weapon circumstantial, particularly when other witnesses directly viewed it. Nor would appellant be entitled to a circumstantial evidence charge merely because that element of the State's case rested upon circumstantial evidence if there is otherwise direct evidence in support of the *factum probandum.*

There is direct evidence that both Rodriguez and Canales were struck by appellant and that as a result of the blows each suffered serious wounds producing severe bleeding. This testimony constituted direct evidence of the assaults (the stabbings) upon both complainants. *Flores v. State,* 372 S.W.2d 687 (Tex.Cr.App.1963); *Miers v. State,* 157 Tex.Cr.R. 572, 251 S.W.2d 404 (1952).

As to Rodriguez, the evidence was entirely direct since he testified that he saw the knife used by appellant to inflict his injuries. The assault upon Canales took place seconds after the assault upon Rodriguez. There is nothing in the record suggesting that anyone other than appellant was the actor. *Cf. Deason v. State,* 128 Tex.Cr.R. 581, 82 S.W.2d 672 (1935).

If we should be in error that the evidence as to the Canales assault did not constitute direct proof obviating the need for a circumstantial evidence charge, nevertheless,

we believe the present case to fall within the rule of close juxtaposition, likewise dispensing with the need for such a charge. *See Smith v. State,* 161 Tex.Cr.R. 620, 273 S.W.2d 623 (1954), *cert. denied,* 349 U.S. 944, 75 S.Ct. 871, 99 L.Ed. 1270 (1954); *Rodriguez v. State, supra.* Appellant's second and third grounds of error are overruled.

In grounds of error four and five, the appellant contends that the charge concerning the aggravated assault on Rodriguez authorized a conviction for an offense not pled in the indictment and incorrectly applied the law to the facts. Appellant points out that the indictment alleges that appellant stabbed Rodriguez with a weapon "that in the manner of its use and intended use is capable of causing death and serious bodily injury." Tex.Penal Code Ann. § 1.07(a)(11)(B) (Vernon Supp.1981). The charge included the two definitions of deadly weapon contained in Tex.Penal Code Ann. § 1.07(a)(11) (Vernon Supp.1981).

Appellant objected to the portion of the charge now complained of in the following manner:

The defendant objects to Paragraph Number Two of the Court's charge because it is ambiguous, uncertain, misleading, contradictory, confusing and fails to correctly state the law applicable to the facts in evidence ... The defendant objects to Paragraph Number Three of the Court's charge because it is ambiguous, indefinite, misleading, contradictory, confusing and fails to correctly state the law applicable to the facts in evidence.

Article 36.14 Tex.Code Crim.Pro.Ann. (Vernon 1982) in pertinent part provides:

Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, *distinctly specifying each ground of objection.* [Emphasis supplied.] * *

■ The burden of bringing the court's attention to an alleged error in the charge is on the accused. *Sattiewhite v.*

*State,* 600 S.W.2d 277 (Tex.Cr.App.1980). Objections to a jury charge must be specific enough to adequately inform the trial court of the essence of the accused's objection. *Hackbarth v. State,* 617 S.W.2d 944 (Tex.Cr. App.1981). A failure to properly object will result in an appellate court having nothing properly before it for purposes of review. *Williams v. State,* 622 S.W.2d 116 (Tex.Cr. App.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876. In the absence of a proper objection only fundamental error will be considered on appeal. *Henderson v. State,* 617 S.W.2d 697 (Tex.Cr.App. 1981).

We hold appellant's trial court objection to the portion of the court's charge complained of on appeal to constitute nothing more than a traditional "shotgun" objection. *Cf. Bilbrey v. State,* 594 S.W.2d 754 (Tex.Cr.App.1980); *Hogan v. State,* 496 S.W.2d 594 (Tex.Cr.App.1973), *cert. denied,* 414 U.S. 862, 94 S.Ct. 81, 38 L.Ed.2d 112 (1973); *Williams v. State,* 441 S.W.2d 853 (Tex.Cr.App.1969).

We next consider whether the portion of the trial court's charge complained of constituted fundamental error. In order for an error to be considered as fundamental, it must be shown by appellant that the erroneous charge goes to the very basis of the case and that the charge fails to state the law under which the appellant was prosecuted. *Williams v. State,* 508 S.W.2d 83 (Tex.Cr.App.1974).

Stated otherwise, the test to be used in the absence of a proper objection to a charge, is whether the inclusion of the contested portion was calculated to injure the rights of an accused, or if as a result of the including of the contested portion the accused failed to receive a fair and impartial trial. *Carrillo v. State,* 566 S.W.2d 902 (Tex.Cr.App.1978).

While it might be better practice for the trial court in its submission of the definition of deadly weapon under Tex.Penal Code Ann. § 1.07(a)(11) to limit itself to

the definition under § 1.07(a)(11)(B) since the indictment specifically alleged the deadliness of the weapon in such terms we cannot conclude that the additional definition under § 1.07(a)(11)(A) rendered the charge fundamentally erroneous. Under the proof elicited before the jury sufficient evidence existed to support a finding that the knife used by appellant was a deadly weapon as defined by either subsection (A) or (B) of § 1.07. We perceive no harm that resulted from the giving of the full statutory definition of a deadly weapon. *See Hawkins v. State,* 605 S.W.2d 586 (Tex.Cr.App.1980); *Stewart v. State,* 532 S.W.2d 349 (Tex.Cr. App.1976).

Appellant contends that a conviction will not stand unless "... the charge authorizes the jury to find appellant guilty for conduct constituting the offense alleged in the indictment." We agree with this rule and note that the conduct alleged in the indictment was an assault on Rodriguez with a deadly weapon. The conduct relied on in the indictment was "knowingly and intentionally causing bodily injury to Leo Rodriguez ... with said deadly weapon." Whether said deadly weapon qualified under § 1.07(a)(11)(A) or § 1.07(a)(11)(B), the jury was only authorized to convict when they found that appellant had used a deadly weapon.

Appellant's reliance on *Robinson v. State,* 553 S.W.2d 371 (Tex.Cr.App.1977) is misplaced. The charge in *Robinson* allowed conviction for a totally different form of robbery than alleged in the indictment. Here, whether the knife was a § 1.07(a)(11)(A) deadly weapon, or § 1.07(a)(11)(B) deadly weapon, the same crime is committed, to-wit: aggravated assault. Grounds of error four and five are, therefore, overruled.

In ground of error nine, appellant argues that the court erred by refusing to instruct the jury that the knife used to stab Rodriguez is not a deadly weapon *per se* as requested by appellant.[2] The court gave

---

2. The requested charge was; "A pocket knife is not *per se* a deadly weapon. However, the

mode and manner of its use, and the wounds inflicted on the injured party are the factors to

the statutory definition of a deadly weapon. *See* § 1.07(a)(11) Tex.Penal Code Ann. (Vernon Supp.1981). In *Grissom v. State,* 625 S.W.2d 424 (Tex.App.—Fort Worth 1982, discr. review ref'd), the court rejected similar contentions holding that the statutory charge was sufficient. In that case, however, the charge requested contained instructions as to size, weight, and length of the weapon, and the court held such matters to be only evidentiary. The requested charge before us on the other hand appears only to address the manner of use and seriousness of the wound inflicted. Both of these factors are contained in the statutory definition. While the court did not give an express charge on whether the knife was *per se* a deadly weapon, the jury was required to take into account the same factors, under both the requested and submitted instructions, in order to find appellant used a deadly weapon. The similarity of the charges leads us to hold it was not reversible error to refuse the requested instruction. Ground of error nine is overruled.

■ Grounds of error seven and eight complain of the trial court's failure to include the lesser included offense of simple assault against Guerra and Rodriguez. The trial court refused appellant's timely request to submit a charge on simple assault to the jury. We do not believe failure to give the requested instruction was error because, as in *McElroy v. State,* 528 S.W.2d 831 (Tex.Cr.App.1975), the issue of simple assault is not raised by the evidence. As in *McElroy,* in this case:

> Appellant offered no evidence that the assault was not committed, or that it was not committed with a knife, or that the knife was not used in such a manner to render it a deadly weapon.

538 S.W.2d at 834.

There is testimony that the knife met the statutory definition of a deadly weapon. The lesser included offense is not raised by

the evidence and thus it was not error to fail to include it in the jury charge. *McBrayer v. State,* 504 S.W.2d 445 (Tex.Cr. App.1974). Grounds of error seven and eight are overruled.

■ Appellant next contends that the evidence is insufficient to show a specific intent to murder. Granted, that a knife is not a deadly weapon *per se,* however, in *Lewis v. State,* 486 S.W.2d 104, 106 (Tex.Cr. App.1972) the testimony of the eyewitnesses as to the manner and force used in inflicting the wounds constituted sufficient evidence before the jury on the issue of intent to kill. In the case before us, we have both the eyewitness' statements and expert testimony that the knife could cause death. Viewing such evidence in the light most favorable to the jury's verdict, we find the evidence sufficient to show specific intent to kill.

■ In his next ground of error, labeled 10A, 10B, and 10C, the appellant proffers the argument that the trial court committed error by allowing Alfred Q. Valenzuela, the court co-ordinator of the 124th District Court, and Richard Reynolds and Larry Noll, both attorneys who witnessed the incident, to testify as to a hearsay statement. All three witnesses stated that during the fracas in the courthouse corridor, they heard someone yell, "Watch it, he has a knife." Rodriguez testified that when the appellant struck at him with the knife he yelled, "Look out, he has a knife." [3] The State, appellant claims, failed to lay the proper predicate for the admission of this testimony. We believe that the State satisfactorily established the elements of *res gestae* as set out in *Tezeno v. State,* 484 S.W.2d 374 (Tex.Cr.App.1972) and the facts in the record sufficiently show the reliability of the statements. *Sellers v. State,* 588 S.W.2d 915 (Tex.Cr.App.1979). Additionally, since all the evidence confirmed appellant's possession of a knife we perceive no

---

be considered in determining the character of the weapon and the intent to kill." A similar charge was properly refused in *Hill v. State,* 167 Tex.Cr.R. 229, 319 S.W.2d 318 (1958).

**3.** Valenzuela testified he heard "people that were out in the hall" state appellant had a knife. Noll said he heard, "Look out, he has got a knife."

harm from a statement repeating a fact already established. Appellant's tenth ground of error is therefore overruled.

The "courthouse stabbing spree," needless to say, received extensive coverage in the local media. At the change of venue hearing the defense put on 18 witnesses who testified to the media coverage of the case. The witnesses testified as to the amount of broadcast time devoted to the escape and capture of appellant. Testimony was elicited as to the number of households viewing the newscasts and the circulation numbers of the print media who carried extensive coverage of the events.

The State controverted the motion for change of venue, extensively cross-examined the defense witnesses, and provided testimony from Bexar County residents who stated that in their opinion appellant could receive a fair trial in Bexar County.

During jury selection, over a year following the event, several venirepersons testified that they remembered the media coverage in a general way. No juror stated that the coverage would affect his verdict.

In ground of error eleven, appellant avers that the trial court erred in failing to grant his motion for change of venue.

 To show error in this regard, appellant must show that the trial court abused its discretion. *Creel v. State,* 493 S.W.2d 814 (Tex.Cr.App.1973); *Morris v. State,* 488 S.W.2d 768 (Tex.Cr.App.1973); *Ward v. State,* 427 S.W.2d 876 (Tex.Cr.App.1968); *Taylor v. State,* 420 S.W.2d 601 (Tex.Cr. App.1967); *McCutcheon v. State,* 363 S.W.2d 457 (Tex.Cr.App.1963).

 In light of the fact that the crimes took place in the courthouse where the case was tried, we quote from *Morris v. State, supra;*

In *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, Justice Clark, speaking for the Court, wrote that it is not required that jurors be totally ignorant of the facts and issues involved in this day of widespread and diverse methods of communication. He also noted that an important criminal case can be expected to arouse interest of the public in the vicinity and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.

He further wrote that it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

In the present case there is no showing that publicity created a prejudice so great as to prevent a fair trial. It appears that the appellant was tried by jurors who had no opinion as to his guilt and that he received a fair trial.

Our courts cannot and do not operate in a vacuum. Courts deal with people and crimes which are newsworthy. To require a trial of jurors who had never heard of a highly publicized crime would be impractical if not impossible. Certainly, it was never intended that jurors were to be selected from those who did not read newspapers or keep up with current events through other media. Jurors selected from such a group, if there are enough to be called a group, would not be representative. To hold otherwise would be to hold that the perpetrator of a very highly publicized crime such as the assassination of a president, a governor or any widely known person could never be tried.

We hold that appellant failed to demonstrate that there existed prejudice in the community of such magnitude that the likelihood of obtaining a fair and impartial jury was doubtful. *Stiehl v. State,* 585 S.W.2d 716 (Tex.Cr.App.1979), *cert. denied,* 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 (1981); *James v. State,* 546 S.W.2d 306 (Tex.Cr.App.1977).

We overrule appellant's contention that the trial court abused its discretion in not changing the venue from Bexar County.

 A prospective venireperson in this cause stated that she did not want to sit on the jury in this case because she has a fear of elevators. She stated that riding on elevators "made her very nervous" and "it

might" have an effect on her verdict because the incidents occurred in an elevator. The trial court refused to dismiss the prospective venireperson for cause and she was seated on the jury. Appellant asked for additional peremptory challenges, which request was refused by the court. Appellant now complains of the refusal to grant peremptory challenges and refusal to dismiss this juror for cause.

When the court denied appellant's request to dismiss for a cause, the defense attorney stated, "Please note my exception that she would be biased or prejudiced against the laws of the case." In his brief the same attorney now argues that the juror "... had a very pronounced fear of elevators which would operate to the bias or prejudice against the defendant if the evidence would show that the crime was committed on an elevator."

We find nothing in Tex.Code Crim.Pro. Ann. art. 35.16 (Vernon Supp.1981) or the case law construing it, which would show that a common form of claustrophobia is either bias against the defendant or the law of the case. In this case the juror stated on questioning by the State that she could be a fair and impartial juror. In light of all the answers given by the juror, *Anderson v. State,* 633 S.W.2d 851 (Tex.Cr.App.1982), and of the fact that the juror demonstrated no bias against the appellant, we do not believe the court erred by denying the challenge for cause. Appellant's grounds of error 12a and 12b are overruled.

■ At the trial of this case, attorney Joe Valdez who represented appellant in a previous unrelated matter testified, without disclosing the prior attorney-client relationship, that appellant was present at the scene of the crime. Appellant contends that since the only way the witness could identify appellant was because he had represented him; such identification is protected by the attorney-client relationship. Article 38.10 is to the contrary, so is *Brasfield v. State,* 600 S.W.2d 288 (Tex.Cr.App.1980)

and the holding of this court. Furthermore, his presence at the scene of the crime was clearly established by numerous other witnesses. Valdez's testimony was merely cumulative of evidence already in the case. Ground of error fourteen is overruled.

■ Appellant next argues that an enhancement count used violated the equal protection clause. State exhibits admitted in evidence disclosed that the prior conviction in cause number 61144 was obtained when appellant was 17 years old. Appellant argues that because article 2338–1 Tex. Rev.Civ.Stat.Ann. (Vernon 1943) was declared unconstitutional in regards to the different ages for male and female offenders, *see Ex parte Matthews,* 488 S.W.2d 434 (Tex.Cr.App.1973), such a conviction is void. This court has rejected this argument in *Aranda v. State,* 625 S.W.2d 8 (Tex.App.— San Antonio 1981), and believes the holding and reasoning therein to be correct. Appellant's last two grounds of error are, therefore, overruled.

We now address appellant's first ground of error which, with not a small amount of legal sophistry, we overrule.

■ In his first ground of error, appellant complains that the trial court erred in failing to quash the indictments in cause nos. 79–CR–0282 and 79–CR–0283 for failure to specify the manner in which appellant had the specific intent to commit murder under § 19.02 Tex.Penal Code Ann. (Vernon Supp.1981).[4] The thrust of appellant's argument is that the indictments do not put him on notice whether the State seeks to prove that he (appellant) intended to cause death under § 19.02(a)(1) or intended to cause serious bodily injury resulting in death under § 19.02(a)(2).

Appellant argues that the indictments did not allege the manner and use, by appellant, of the knife in the stabbing of the complainants. He also argues that the allegations in the indictments of the act of stabbing with a knife are insufficient to

---

4. No contention is made by appellant that the indictments ever led him to believe that the State might be relying on attempted murder

arising under § 19.02(a)(3) of the murder statute.

raise adequate notice of whether appellant had the specific intent to cause the death, or whether he committed an act that was clearly dangerous to human life.

The very same issue now raised by appellant was recognized but not answered in *Baldwin v. State,* 538 S.W.2d 615 (Tex.Cr. App.1976) because in *Baldwin* a motion to quash was not filed by defense counsel.

The Court of Criminal Appeals held in *Dovalina v. State,* 564 S.W.2d 378 (Tex.Cr. App.1978) that the word "attempt" necessarily means "intent." In *Telfair v. State,* 565 S.W.2d 522 (Tex.Cr.App.1978) on the State's motion for rehearing, the court quoted from BRANCH'S ANN.PENAL CODE 2d ed. § 1866 which states;

The word "attempt" is a word of more comprehensive meaning than the word "intent" and includes the latter.

In *Dovalina v. State, supra,* in Judge Odom's concurring opinion the suggestion is made that section 19.02(a)(1) is the only form of murder that requires an intent to murder, and since section 15.01(a) requires an intent to commit the offense attempted, only section 19.02(a)(1) will support attempted murder. But since neither *Baldwin v. State, supra, Garcia v. State,* 541 S.W.2d 428 (Tex.Cr.App.1976) nor *Dovalina v. State, supra,* addressed the question of sufficiency of the indictment to give notice as opposed to fundamental defect in the indictment, none of those cases are dispositive of the contention before us.

Even if the specific intent required for attempted murder under § 19.02(a)(2) is only the intent to cause serious bodily injury and not the specific intent to kill, *see Baldwin v. State, supra; Garcia v. State, supra,* in the face of a timely objection by motion to quash on this ground, we would not be justified in replying that a defendant is not entitled to know because proof of an (lesser culpable mental state) intent to cause serious bodily injury will suffice to support attempted murder. *Drumm v. State,* 560 S.W.2d 944 (Tex.Cr.App.1977). We believe that appellant was entitled to know upon proper objection and we thus move on to the indictments complained of

to see if they are subject to the infirmities alleged.

Both indictments in question are identical with the exception of the complainant's name. They read in pertinent part:

... Gregorio Lopez did then and there intentionally and knowingly attempt to cause the death of [complainant] by stabbing [complainant] with a knife, an act amounting to more than mere preparation that tended but failed to effect the commission of the offense of murder, having at the time the specific intent to commit the offense of murder....

We construe the indictment to allege the equivalent of:

Gregorio Lopez, having at the time the specific intent to commit the offense of murder intentionally and knowingly attempted to cause the death of [complainant] by stabbing [complainant] with a knife, etc.

Thus read, appellant is clearly informed that the murder intended was a § 19.-02(a)(1) type murder because he attempted (intended) to cause the death of the complainant.

Nothing in the indictments indicate that appellant desired anything less than the deaths of the complainants when he used a knife to perform the act of stabbing.

We fail to perceive how appellant could have been misled into believing that the State would rely on anything other than § 19.02(a)(1) to seek convictions for attempted murder through the vehicle of § 15.01(a). We overrule appellant's contention that the indictments deprived him of proper notice.

Ground of error one is overruled and the conviction is affirmed.