Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-07-00775-CR

Gentries **THOMAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 07-03-083-CRW
Honorable Stella Saxon, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Karen Angelini, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:   December 17, 2008

AFFIRMED

Appellant Gentries Thomas was convicted by a jury of aggravated robbery. On appeal,

Thomas argues that (1) the evidence was legally and factually insufficient to support the jury's

verdict and (2) the failure to give the statutory definition in the jury charge constituted egregious

error. We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Billy Lott testified that he had known Tamara Porter and Appellant Gentries Thomas

"since they were in diapers." On January 4, 2007, after cashing his $2,000 paycheck for a "wad

of bills" which Porter noticed, Lott drove Porter to a gas station and then to her sister's apartment. After they left the apartment, Porter asked Lott to stop at a rest area so that she could use the restroom. Approximately ten minutes after Lott stopped, Thomas's car pulled in behind Lott's vehicle and everyone exited their vehicle. Thomas conversed with Porter near the back of Thomas's car. When another car arrived, all three left the rest area in their respective cars and Porter asked Lott to take her to a different rest area so that she could finish talking to Thomas. Lott drove to the rest area, where Thomas was already waiting, and, at Porter's request, Lott exited his vehicle. Shortly thereafter, Thomas hit Lott on the back of the head with what Lott described as something hard inside a sock. According to Lott, he was forced to the ground by Thomas while Porter removed his pants and searched them for his wad of bills. After deciding Lott did not have the money, Thomas and Porter left the rest area.

At trial, Lott testified that Thomas used a white sock with something hard in it to swing against the back of his head. Lott described the blow as so hard that "it felt like someone shot [him]." After Thomas and Porter left, Lott hid in a nearby field before going to a friend's home and being transported by EMS to the hospital where he stayed for three days. Lott told an investigating officer that Gentries had done it, but that he did not know what Gentries used to strike him. No weapon was ever found.

Thomas entered a plea of not guilty and provided an alibi for his whereabouts. The jury found Thomas guilty of aggravated robbery and sentenced him to thirty years confinement.

## SUFFICIENCY OF EVIDENCE TO SUPPORT JURY VERDICT

In his first appellate issue, Thomas argues that the evidence was legally and factually insufficient to prove the existence of either a deadly weapon or serious bodily injury as defined in the Texas Penal Code. We disagree.

**A.      Standard of Review**

When reviewing the legal sufficiency of the evidence, the court examines the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The standard of review is the same whether the evidence is direct, circumstantial, or both. *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

In a factual sufficiency review, we consider all the evidence in a neutral light and only reverse if: (1) the evidence is so weak as to make the verdict "clearly wrong and manifestly unjust," or (2) the verdict is "against the great weight and preponderance of the evidence." *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). However, we must avoid "substituting [our] judgment for that of the fact-finder . . . [whose] role [is] as the sole judge of the weight and credibility [of] witness testimony." *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc).

**B.      Aggravated Robbery**

A person commits the offense of aggravated robbery if he commits a robbery and either (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon during the commission of the robbery. TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46) (Vernon Supp. 2008). Additionally, the Penal Code defines "deadly weapon" as:

> (A)   a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

    (B)    anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

*Id*. § 1.07(a)(17).

Whether an object qualifies as a deadly weapon depends upon the evidence presented. *See Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991); *Lopez v. State,* 651 S.W.2d 830, 835 (Tex. App.—San Antonio 1983, pet. ref'd). Indeed, the court of criminal appeals has noted that "almost anything can be a deadly weapon depending upon the evidence shown." *Lane v. State*, 151 S.W.3d 188, 191 n.5 (Tex. Crim. App. 2004) (citation omitted). An object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

The fact-finder may use several factors "in determining whether an object is capable of causing death or serious bodily injury." *Bailey v. State*, 46 S.W.3d 487, 492 (Tex. App.—Corpus Christi 2001, pet. ref'd). They include:

> (1) physical proximity between the victim and the object, (2) the threats or words used by the defendant, (3) the size and shape of the weapon, (4) the weapon's ability to inflict death or serious injury, and (5) the manner in which the defendant used the weapon. No one factor is determinative, and each case must be examined on its own facts.

*Id.* (citations omitted). In deciding if the weapon is deadly, the jury is free to consider all the facts of a case including any actual wounds inflicted or words spoken by the appellant. *Harper v. State,* 753 S.W.2d 516, 518 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). "The best proof that an instrument is *capable* of causing serious bodily injury is that, in the manner of its use, it did exactly that." *Bosier v. State*, 771 S.W.2d 221, 224 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). A victim may also testify as to the quality and nature of his injuries. *Hart v. State,* 581 S.W.2d 675, 677 (Tex. Crim. App. 1979).

### C.    Analysis

In the present case, the jury heard Lott's testimony regarding the nature of the weapon used: (1) the initial blow was similar to a gunshot, and (2) the hardness of the object was compared to a baseball bat.  Lott said he was struck by the weapon eight to ten times in the head, with a force so violent it fractured his skull.  The jury saw evidence of the injuries from pictures taken immediately after the incident, as well as after the wounds had time to heal.  Lott further stated that ten months after the incident, he was still experiencing pain, headaches, impairment in sleeping, and had not been able to return to work.

Thomas points to the testimony of Investigator Laughlin to dispute Lott's theory that he was hit with something hard.  Investigator Gary Laughlin testified that there was blood on the barbecue pit at the scene of the incident, but the blood was never tested to compare with Lott's blood type.  Thomas urges that the unidentified blood on the pit shows that Lott was injured by a fall against the pit rather than by an unknown weapon.

Even when the weapon is unknown, as is the case here, the jury may still determine that the defendant used a deadly weapon.[1]  *Mixon v. State*, 781 S.W.2d 345, 346 (Tex. App.—Houston [14th Dist.] 1989), *aff'd*, 804 S.W.2d 107 (Tex. Crim. App. 1991) ("[W]e see nothing in the reasoning of prior deadly weapon cases that would preclude a deadly weapon finding simply because the weapon is not specifically known.").  Factors that weigh in favor of the use of a deadly weapon in this case include (1) the proximity of Lott and the weapon, (2) Lott's testimony of the size and shape of the weapon in that it appeared to be something hard in a tube sock that was swung forcefully against his skull, (3) the weapon's ability to inflict death or serious injury is visible from Lott's fractured skull and lingering physical problems, and (4) the

---

[1] Although Lott testified that he was struck with something hard in a tube sock, no weapon was found and he was unable to identify the object inside the sock.

weapon was used in a forceful manner repeatedly striking Lott's head like a bullet. The only factor missing is that there is no evidence of any threats or comments made by the defendant while Lott was being beaten. Based on the evidence presented, the jury could have rejected Thomas's barbeque pit theory and determined that the hard object in the sock was capable of causing death or serious bodily injury.[2]

Based on Lott's testimony, and examining the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found Thomas guilty beyond a reasonable doubt of aggravated robbery. *See Jackson*, 443 U.S. at 319; *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). Additionally, the evidence is not so weak as to make the verdict clearly wrong or manifestly unjust, or against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 415. Accordingly, we hold the evidence is legally and factually sufficient to support the jury's determination that Thomas used a deadly weapon during the commission of the robbery. Therefore, we overrule Thomas's first issue.

### DEFINITION IN JURY CHARGE

Thomas next argues that the court's failure to charge the relevant statutory definition of "deadly weapon" caused egregious harm. We disagree.

### A. Standard of Review

A defendant is generally required to object to the jury charge "to preserve his complaint for appellate review." *Vaughn v. State*, 888 S.W.2d 62, 69 (Tex. App.—Houston [1st Dist.] 1994), *aff'd*, 931 S.W.2d 564 (Tex. Crim. App. 1996). Absent an objection, Thomas was required to show that the harm caused by the charge deprived him of a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), *abrogated in part by*

---

[2] Thomas contends that Lott did not receive any serious bodily injury. However, because the evidence is legally and factually sufficient to support an implied finding of Thomas's use of a deadly weapon, we need not address whether Lott's injuries constituted serious bodily injury.

*Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988); *De Los Santos v. State*, 219 S.W.3d 71, 78 (Tex. App.—San Antonio 2006, no pet.). Furthermore, because Thomas raises this for the first time on appeal, we will reverse only upon a finding of egregious harm. *See Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); *De Los Santos*, 219 S.W.3d at 78.

Egregious harm errors are those affecting "'the very basis of the case'", "depriv[ing] the accused of a 'valuable right,'" or "'vitally affecting [a] defensive theory.'" *Almanza*, 686 S.W.2d at 172 (citations omitted); *accord Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). An appellate court reviews whether egregious harm occurred by reviewing the error "'in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial [court] as a whole.'" *Skinner v. State*, 956 S.W.2d 532, 544 (Tex. Crim. App. 1997) (quoting *Almanza*, 686 S.W.2d at 171).

**B.   Jury Charge**

"[A] judge shall deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). A jury charge should contain both an abstract portion and an application portion. *Riley v. State*, 830 S.W.2d 584, 586-87 (Tex. Crim. App. 1992). The abstract, or definitional paragraphs, serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *See Caldwell v. State*, 971 S.W.2d 663, 667 (Tex. App.—Dallas 1998, pet. ref'd). The application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury. *McFarland v. State*, 928 S.W.2d 482, 515 (Tex. Crim. App. 1996), *abrogated in part by Mosley v. State*, 983 S.W.2d 249, 264 n.18 (Tex. Crim.

App. 1998). "If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury." *Hudson v. State*, 179 S.W.3d 731, 739 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *accord Arline v. State*, 721 S.W.2d at 352 n.4.

Thomas properly asserts that "deadly weapon" necessitates a statutory definition in the charge of aggravated robbery. Furthermore, Thomas alleges that the trial court's failure to provide the statutory definition of deadly weapon in the *definition section* of the jury charge egregiously harmed him so as to merit a reversal. Yet, Thomas ignores the application paragraph in the jury charge which provided as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on the 4th day of January, 2007 . . . [Gentries Thomas] did intentionally or knowingly cause serious bodily injury to Billy Lott by striking him about the head and face with an unknown object wrapped in a cloth, and the defendant did then and there exhibit a deadly weapon, to-wit: an unknown object, that in the manner of its use and intended use was capable of causing death or serious bodily injury.

*See* TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2008); *id.* § 29.03(a)(1)-(2) (Vernon 2003). In its plain language, the application paragraph of the jury charge included the statutory definition of deadly weapon.

Thomas's argument also fails to recognize the long line of cases holding that the crucial part of the charge in determining the existence of error is that part where the law is applied to the facts, i.e., the application paragraph. *Williams v. State*, 612 S.W.2d 934, 935 (Tex. Crim. App. 1981) (listing cases). Although the charge may contain an erroneous definition, so long as that part of the charge applying the law to the facts does not authorize conviction on theories not alleged in the indictment, no fundamental error exists. *Id.* "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also Navarro v. State*, 863 S.W.2d 191, 196 (Tex. App.—Austin 1993) (determining that a correctly worded application paragraph limited

the potentially overly broad culpable mental states definitions and made "the disputed definitional language . . . irrelevant"), *pet. ref'd*, 891 S.W.2d 648 (Tex. Crim. App. 1994) (en banc).

While deadly weapon was not defined in the definitions section of the jury charge, it was properly defined in the application paragraph. Accordingly, we find no reversible harm and overrule Thomas's issue on appeal.

## CONCLUSION

The evidence is both legally and factually sufficient to support the jury's finding of aggravated robbery by use of a deadly weapon or causing serious bodily injury. Additionally, Thomas has failed to show egregious harm from the charge defining deadly weapon in the application paragraph rather than abstract portion. Therefore, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH